TERRITORY v. ALASKA PAC. FISHERIES.

SAME v. HOONAH PACKING CO.

(First Division. Juneau. August 11, 1915.)

Nos. 1325–A, 1326–A.

1. FISH ⬅=⬆9—STATUTES ⬅=⬆55—CRIMINAL LAW.

Prior to 1912 Congress had enacted laws for the protection of the fisheries of Alaska, and assessed a tax on the manufactured output thereof. On August 24, 1912, Congress passed an act creating a Legislature in Alaska (Act Aug. 24, 1912, c. 387, 37 Stat. 512) and conferring on it legislative power to alter, amend, modify, and repeal existing laws, but providing that the power "herein granted to the Legislature * * * shall not extend to the fish * * * laws: * * * Provided further, that this provision shall not operate to prevent the Legislature from imposing other and additional taxes or licenses" on the fisheries. By an act of the territorial Legislature approved April 29, 1915 (Session Laws 1915, p. 185), the Legislature did impose

⬅=⬆See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

other and additional license taxes on fish traps in Alaska. The defendant refused to pay his license tax and was sued therefor under the territorial act. He defended upon the ground that by a prior act of Congress the United States had reserved to itself the exclusive control of fish in Alaska, and therefore the Legislature of the territory was without power to levy the tax sued for. *Held*, the act of 1912 creating the Legislature and conferring the power to levy the tax, being the latest expression of the Congressional will on the subject, repealed that part of the prior act of Congress which declared that the original tax levied by Congress "shall be in lieu of all other license fees and taxes." The territorial act levying the "other and additional taxes" is a valid exercise of power conferred by Congress.

2. TERRITORIES ⬥8—CONSTITUTIONAL LAW—FISH—STATUTES.

By Act June 26, 1906, c. 3547, 34 Stat. 478, Congress levied a license tax on canned salmon and other fishery products in Alaska, "in lieu of all other license fees and taxes therefor and thereon." By Act Aug. 24, 1912, c. 387, 37 Stat. 512, Congress created the Legislature of Alaska, and gave it power "to alter, amend, modify, and repeal laws in force in Alaska," with certain reserved exceptions, among them being "that the authority herein granted to the Legislature to alter, amend, modify, and repeal laws in force in Alaska shall not extend to the * * * fish * * * laws: * * * Provided further, that this provision shall not operate to prevent the Legislature from imposing other and additional taxes or licenses." The Legislature passed the act of April 29, 1915 (Session Laws 1915, p. 185), imposing other and additional license taxes on fish traps in Alaska. Defendant was sued to recover the tax, which he refused to pay, and defended upon the ground that the tax is a *violation of section 8*, art. 1, Const. U. S., for the want of uniformity throughout the United States. *Held*, the revenue to be raised by the act, including the tax sued for, is a local tax for the support of the territory, and not open to the constitutional objection, under the authority of Binns v. United States, 194 U. S. 486, 24 Sup. Ct. 816, 48 L. Ed. 1087.

3. TERRITORIES ⬥11—CONSTITUTIONAL LAW—LEGISLATIVE POWERS.

Congress has plenary legislative power in the territory of Alaska. It can legislate on all rightful subjects of legislation therein not prohibited by the national Constitution, and can confer that power on a territorial Legislature created therein under the Congress.

4. TERRITORIES ⬥20—LEGISLATIVE POWER—LIMITATIONS.

The powers of the territorial Legislature of Alaska are limited by the act defining those powers. The Organic Act is a grant of specific powers, and not a reservation of specific powers. The legislative power extends to "all rightful subjects of legisla-

⬥See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion not inconsistent with the Constitution and laws of the United States," not forbidden by the limitations of the grant in the Organic Act.

5. STATUTES ⚌245—TAXATION—CONSTRUCTION.
    Taxation statutes are to be strictly construed against the taxing power, yet they are to be construed to mean something, if possible, and are not to have their vitality frittered away by technical refinements.

By act approved April 29, 1915 (Sess. Laws 1915, p. 185), the Legislature of Alaska provided as follows:

"Section 1. That any person, firm or corporation prosecuting or attempting to prosecute any of the following lines of business in the territory of Alaska shall apply for and obtain a license and pay for said license, for the respective lines of business as follows: * * * 8. Fish traps, fixed or floating, $100.00 per annum. So-called dummy traps included. * * *"

It also provided in section 2 that:

"Every person, firm or corporation desiring to engage in any of the lines of business specified in section 1, shall first apply to and obtain from the territorial treasurer a license. If the tax for the license applied for is a fixed sum, the amount of such license tax shall accompany the application."

Said section 2 further provided for the bringing of a suit, either civil or criminal, to collect the license; and section 4 of the said act provided:

"Special remedies provided by this act * * * shall not be deemed exclusive, and any appropriate remedy, either civil or criminal or both, may be invoked by the territory in the collection of all taxes; and in civil actions the same penalties may be collected as are herein provided in criminal actions."

Under the provisions of this act of the Legislature, the territory of Alaska brought suit against the defendant, alleging in the complaint:

"That during the month of June, 1915, and continuously up to the present time, the defendant was engaged in and prosecuting and attempting to prosecute the business of fishing by means of fish traps situate in the waters of Alaska, and that it has failed, neglected, and refused to pay the license tax, or any part thereof, provided for by said act of the Legislature. Wherefor the territory asks for judgment for the amount of the license tax due."

⚌See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

To this a demurrer has been interposed, on the ground that the said complaint does not state facts sufficient to constitute a cause of action; and in support of the demurrer the point is raised that the Legislature had no power to impose such a tax, for the reasons:

(1) Congress has reserved to itself the exclusive control of the fish and game of Alaska.

(2) The said tax is in violation of section 9 of the Organic Act of the territory (Act Aug. 24, 1912, 37 Stat. 512), which provides:

"All taxes shall be uniform upon the same class of subjects, and shall be levied and collected under general laws, and the assessment shall be according to the actual value thereof."

J. H. Cobb, of Juneau, for plaintiff.
Z. R. Cheney, of Juneau, for defendants.

JENNINGS, District Judge. As to the first point raised in support of the demurrer, to wit, "Congress has reserved to itself the exclusive control of the fish and game of Alaska," it is urged that by the act approved June 26, 1906 (34 Stat. 478), Congress provided:

"That every person, company, or corporation carrying on the business of canning, curing, or preserving fish or manufacturing fish products within the territory known as Alaska * * * shall, in lieu of all other license fees and taxes therefor and thereon, pay license taxes on their said business and output as follows:

Cannel salmon, 4¢ per case;
Pickled salmon, 10¢ per barrel;
Salt salmon in bulk, 5¢ per 100 pounds;
Fish oil, 10¢ per barrel;
Fertilizer, 20¢ per ton."

And that the Organic Act of the territory, passed six years after the act of 1906, and which provides that the power of the Legislature should not extend to the fish laws, "or to the laws of the United States providing for taxes on business and trade: * * * Provided, further, that this provision shall not operate to prevent the Legislature from imposing other and additional taxes or licenses" (C. L. 1913, § 410), should be taken to mean that the Legislature is not prohibited from imposing other and additional licenses or taxes "on other kinds of industries and on other kinds of business or trade not covered by the act of 1906."

The reasoning advanced why the court should so hold is not convincing. On the contrary, as the Organic Act is the latest expression of the legislative will on the subject, it would seem that it must be taken as repealing that part of the former act which is in conflict therewith, to wit, "shall, in lieu of all other license fees and taxes." For the court to hold that the later act does not repeal the former act to the extent indicated, it would be compelled to read into the later act some words which are not there, to wit: "On other kinds of industries and on other kinds of business or trade not covered by the act of 1906." This would not be justified by any canon of construction. The very position of the proviso in the statute shows what Congress had in mind, to wit, that in imposing other and additional licenses or taxes the Legislature should not be fettered by anything contained in the act of 1906. It is not apparent that there is any need of construction, for the language is plain and unambiguous. A reference to the debates in Congress when the bill was before it would clear up any ambiguity, if, indeed, any such existed.

The bill came up for argument on Wednesday, the 24th of April, 1912. In its original form the proviso was as follows:

"That the authority herein granted to the Legislature to alter, amend, modify and repeal laws in force in Alaska shall not extend to the customs, internal revenue, postal or other general laws of the United States."

And nothing was there said about the game or the fish. Whereupon the following occurred:

Mr. Willis: Mr. Chairman, I offer the following amendment, which I send to the desk and ask to have read.

The clerk read as follows:

Line 9, page 23, after the word "States," insert the words "or to the game laws of the United States applicable to Alaska."

Mr. Mann: Why not make it game and fish laws?

Mr. Wickersham: Mr. Chairman, I think the fish laws ought to be left alone.

Mr. Mann: Why not make it game and fish laws, so that they cannot repeal the fish laws? They can pass new fish laws.

Mr. Willis: Mr. Chairman, I will accept that amendment, and ask unanimous consent that it be so modified, and reported as modified.

The Chairman: Without objection, the amendment will be so modified, and the clerk will report the amendment as modified.

The clerk read as follows:

Line 9, page 23, after the words "States," insert the words "or to the game and fish laws of the United States applicable to Alaska."

Mr. Wickersham: Mr. Chairman, I do not think that the word "fish" ought to be in there. I think the fisheries in Alaska need protection. They belong to the people of the state or to the territory, and they do not belong to the government of the United States. They are not now being protected. They are not now being conserved, and if this Legislature will do something toward conserving and protecting the fish it ought to be allowed to do it. This simply bars the Legislature from protecting the fisheries in that territory, and it ought not to be in the bill.

Mr. Mann: The gentleman will notice this provision does not apply to passing laws, but only to the repealing of laws.

Mr. Willis: It seems to me the observation of the gentleman from Illinois answers the objection of the gentleman from Alaska. It simply provides, if it shall be adopted, that the Legislature of the territory of Alaska shall not have the power to alter, amend, or repeal the United States fish or game laws now in force in the territory. It does not take away from the Legislature the power to pass additional laws of that character. It seems to me that meets the objection.

Mr. Wickersham: I think they ought to be allowed to amend them.

Mr. Willis: We have a federal fish law in Alaska. The gentleman is not objecting to that.

Mr. Wickersham: No.

Mr. Willis: That is all this amendment provides; that the Legislature shall not have the power to amend the present fish or game laws.

Mr. Wickersham: What does that mean?

Mr. Willis: It means that the present law shall stand.

Mr. Flood, of Virginia: Suppose Congress passes a law revising and extending the fish laws there?

Mr. Willis: Well, undoubtedly that will be the paramount law of Alaska.

Mr. Flood, of Virginia: What will be the effect of the gentleman's amendment?

Mr. Willis: The effect of this amendment will be, as I understand it, simply to take away from the Legislature of Alaska the power to amend the fish or game laws now in effect in Alaska.

Mr. Flood, of Virginia: It would not have the effect to take away from the Legislature of Alaska the power to amend the fish laws we hereafter pass.

Mr. Willis: No; I do not think it would, as I have worded it, although I did not have that in mind when I drafted the amendment.

Mr. Mann: They would not have that power.

Mr. Willis: They would not have that power now.

Mr. Flood, of Virginia: The gentleman is aware of the fact there is a proposition to revise the fish laws?

Mr. Willis: Yes; I think the bill is a good one and ought to pass.

Mr. Flood, of Virginia: And will in all probability become the law.

Mr. Willis: It seems to me this meets the objection that has been raised in a perfectly fair manner, and I think it is a fair objection; but I do not believe the Legislature ought to repeal the present game or fish laws.

Mr. Mann: We have endeavored to provide in a way for the conservation of the fisheries and game up there. We ought not to permit those laws to be repealed; but, if they want to make them more stringent, and probably do, they ought to have that right.

Mr. Flood, of Virginia: I do not think the amendment means anything; but, if it will please anybody to put it in, why, let it go.

Mr. Wickersham: I shall withdraw my objection.

The question was taken, and the amendment was agreed to.

(Vol. 48, part 6, page 5288, Congressional Record, 62d Congress, Second Session.)

This, however, did not seem to be specific enough for the Senate, for when the bill reached that body it was amended by having added to it this provision:

"Provided, further, that this provision shall not operate to prevent the Legislature from imposing other and additional taxes and licenses."

The House refused to agree to this and to several other amendments, and the committee on conference of the House reported, recommending that the House recede from its disagreement to this Senate amendment. The House did recede from said disagreement, and the Senate proviso was added to the bill.

This occurred on August 20, 1912, and the record of it is found in said Congressional Record at page ——.

Thus it will be seen—

(1) That there is on the face of the bill no expression of any such purpose as is contended for.

(2) That no such purpose as is contended for was in the minds of the legislators when the bill passed, but, on the contrary, what was in their minds was that the Legislature should have the power to levy additional taxes on the fish and the game business and on other businesses.

As to the second point raised in support of the demurrer, to wit, "The said tax is in violation of section 9 of the Organic Act of the territory."

A reference to the legislation and to one Supreme Court decision on the subject of the taxation of the fisheries business in Alaska may throw some light on the subject.

By the Criminal Code of Alaska, adopted March 3, 1899 (C. L. 1913, § 2569), Congress provided:

"That any person or persons, corporation, or company prosecuting or attempting to prosecute any of the following lines of business within the district of Alaska shall first apply for and obtain a license so to do from a district court or a subdivision thereof in said district, and pay for said license for the respective lines of business and trade as follows, to wit: * * *

Fisheries:  Salmon canneries, 4¢ per case;
            Salmon salteries, 10¢ per barrel;
            Fish oil works, 10¢ per barrel;
            Fertilizer works, 20¢ per ton.  *  *  * "

The point was raised that this act was in violation of section 8, article 1, of the Constitution of the United States, which reads:

"The Congress shall have power to lay and collect taxes, duties, imposts and excises, * * * but all duties, imposts and excises shall be uniform throughout the United States"

—and that said act, insomuch as it directed the money to be paid into the treasury of the United States, could not be sustained. The point was passed upon in the case of Binns v. United States, 194 U. S. 486, at page 491, 24 Sup. Ct. 816, at page 817 [48 L. Ed. 1087], and Justice Brewer says:

"We shall assume that the purpose of the license fees required by section 460 is the collection of revenue, and that the license fees are excises within the constitutional sense of the terms. Nevertheless we are of opinion that they are to be regarded as local taxes imposed for the purpose of raising funds to support the administration of local government in Alaska. It must be remembered that Congress, in the government of the territories, as well as of the District of Columbia, has plenary power, save as controlled by the provisions of the Constitution; that the form of government it shall establish is not prescribed, and may not necessarily be the same in all the territories. We are accustomed to that generally adopted for the territories, of a quasi state government, with executive, legislative, and judicial officers, and a Legislature endowed with the power of local taxation and local expenditures; but Congress is not limited to this form. In the District of Columbia it has adopted a different mode of government, and in Alaska still another. It may legislate directly in respect to the local affairs of a territory, or transfer the power of such legislation to a Legislature elected by the citizens of the territory. It has provided in the District of Columbia for a board of three commissioners, who are the controlling officers of the District. It may intrust to them a large volume of legislative power, or it may by direct legislation create the whole body

of statutory law applicable thereto. For Alaska Congress has established a government of a different form. It has provided no legislative body, but only executive and judicial officers. It has enacted a Penal and Civil Code. Having created no legislative body and provided for no local legislation in respect to the matter of revenue, it has established a revenue system of its own, applicable alone to that territory. Instead of raising revenue by direct taxation upon property, it has, as it may rightfully do, provided for that revenue by means of license taxes."

And later on in the decision the learned justice quotes the following from volume 32 Congressional Record, part 3, p. 2235, to wit:

" 'The committee on territories have thoroughly investigated the condition of affairs in Alaska and have prepared certain licenses which in their judgment will create a revenue sufficient to defray all the expenses of the government of the territory of Alaska. * * * They are licenses peculiar to the condition of affairs in the territory of Alaska on certain lines of goods, articles of commerce, etc., which, in the judgment of the committee, should bear a license, inasmuch as there is no taxation whatever in Alaska. Not one dollar of taxes is raised on any kind of property there. It is therefore necessary to raise revenue of some kind, and in the judgment of the committee on territories, after consultation with prominent citizens of the territory of Alaska, including the Governor and several other officers, this code or list of licenses was prepared by the committee. It was prepared largely upon their suggestions and upon the information of the committee derived from conversing with them.' While, of course, it would have simplified the matter and removed all doubt if the statute had provided that those taxes be paid directly to some local treasurer and by him disbursed in payment of territorial expenses, yet it seems to us it would be sacrificing substance to form to hold that the method pursued when the intent of Congress is obvious, is sufficient to invalidate the taxes. In order to avoid any misapprehension we may add that this opinion must not be extended to any case, if one should arise, in which it is apparent that Congress is, by some special system of license taxes, seeking to obtain from a territory of the United States revenue for the benefit of the nation as distinguished from that necessary for the support of the territorial government."

Thus it will be seen that the license was declared to be a tax and was sustained as not being in contravention of the said article of the Constitution, on account of the fact that the money, although to be paid into the treasury of the United States, was to be used for the support of the territory; in other words, that it was a tax imposed on businesses in Alaska

by Congress, the then legislative body for Alaska, for local purposes.

Then came the acts of Congress of June 6, 1906, and of August 24, 1912, supra.

Such being the state of federal legislation on the subject of taxing the fishing industry in Alaska, the Legislature of Alaska passed the act whose validity is here assailed.

We have seen by the Binns Case that Congress when imposing a license tax system on businesses in Alaska, was not fettered by the constitutional prohibition as to uniformity. It must be conceded that Congress had plenary power over the territory; that is, that it could legislate on all rightful subjects of legislation not prohibited by the national Constitution. This power it had, not so much from its constitutional power to make rules and regulations for the government of the territory, as from its inherent power arising from the ownership of the res. Having this power, Congress certainly had the power to confer it upon the Legislature. It is true that the powers of that Legislature are limited by the act defining those powers, and that in this respect a territorial Legislature differs from state Legislatures; that is to say, the organic act of a territory is a grant of specific powers and not a reservation of specific powers.

Congress, when implanting this new jurisdiction in Alaska, expressly provided that the power of the Alaska Legislature—

"shall extend to all rightful subjects of legislation not inconsistent with the * * * laws of the United States, but" it shall not, etc.

Then follow exceptions too numerous to mention, more than have obtained in the case of any other territory, well-nigh emasculating the original grant, and causing it to "speak the word of promise to the ear and break it to the hope." However, of its pristine vigor there is left enough to justify the imposition of license taxes and property taxes. Such power finds its warrant in the principle that, unless a power is forbidden to our Legislature, the latter possesses the power, "provided it be a rightful subject of legislation." That is to say, Congress, ordaining for this territory an Organic Act, does a thing for the territory which in its nature, but not in its extent, is similar, analogous, to what the people of a state do when they adopt a Constitution for the state.

"The legislative power to be exercised by the territorial Legislature is the legislative power of the territory, not that of the United States. Both states and territories, in a certain sense, derive their existence from the legislation of Congress; but the jurisdiction and authority exercised, either by a state or territory, is that of a state or territory, and not that of Congress. Territorial statutes have a distinct and well-defined character of their own. The people of a territory, when authorized to form a territorial government, are vested with a qualified sovereignty. Congress may limit their powers, and may annul their enactments, but, subject to these limitations, the territory is a government. Its laws, unless set aside by Congress or the courts, are the laws of the territory. They are not laws of the United States, within the ordinary meaning of those terms; certainly not in the sense that the acts of Congress, approved by the president, are laws of the United States." Adams Exp. Co. v. Denver & R. G. R. Co. (C. C.) 16 Fed. 715.

This being true, the inquiries are these:

(a) When the Legislature imposed this license tax, was it exercising power over a rightful subject of legislation? If it was not so exercising power, the enactment must fall; if, however, it was so exercising power, the enactment must stand, unless it violates some other provision of the Constitution, the Organic Act.

That the power to raise revenue by levying a license tax on business pursuits is "a rightful subject of legislation" will hardly be denied. 25 Cyc. p. 599, § 3, and cases cited in note 16.

(b) Pursuing the argument, then: Such power, being a rightful subject of legislation, exists in the Legislature of this territory, unless there is some provision in the Organic Act which negatives the power. If there is any such provision, where is it to be found?

Counsel for defendant affects to find it in that provision of the Organic Act which declares that:

"All taxes shall be uniform upon the same class of subjects and shall be levied and collected under general laws, and the assessments shall be according to the value thereof. No taxes shall be levied for territorial purposes in excess of one per centum upon the assessed valuation of property therein in any one year."

If this uniformity requirement applied to anything except direct property taxes, the argument might prevail; but that in fact it does apply exclusively to direct property taxes, and to nothing else, has been decided so often as to be beyond cavil. 25 Cyc. pp. 605, 606, and cases cited.

"The Constitutions of many of the states contain the requirement that taxation shall be equal and uniform, that all property in the state shall be taxed in proportion to its value, that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, or that the Legislature shall provide for an equal and uniform rate of assessment and taxation; and in the face of such provisions a tax law which violates the prescribed rule of equality and uniformity is invalid, although there is sufficient difference in the wording of the different provisions to account for some lack of uniformity in the decisions as to what constitutes a violation of their requirements. The requirement does not apply to every species of taxation, and does not restrict the Legislature to the levying of taxes upon property alone. The restriction relates only to the rate or amount of taxation and its incidence upon taxable persons and property, and does not limit the Legislature in regulating the mode of levying and collecting the taxes imposed, and it also relates only to property within the state, and neither the statutes of another state nor the action of its taxing officers can affect the question. In the absence of such a constitutional requirement it is not essential to the validity of taxation that it shall be equal and uniform, and in such a case a tax law cannot be declared unconstitutional merely because it operates unequally, unjustly, or oppressively.

"The requirement of equality and uniformity applies only to taxes in the proper sense of the word, levied with the object of raising revenue for general purposes, and not to such as are of an extraordinary and exceptional kind, or to local assessments for improvements levied upon property specially benefited thereby, or to other burdens, charges, or impositions which are not properly speaking taxes; and further, such a constitutional provision is to be restricted to taxes on property, as distinguished from such as are levied on occupations, business, or franchises, and on inheritances and successions, and as distinguished also from exactions imposed in the exercise of the police power rather than that of taxation.

"The principle of equality and uniformity does not require the equal taxation of all occupations or pursuits, nor prevent the Legis-lature from taxing some kinds of business while leaving others exempt, or from classifying the various forms of business, but only that the burdens of taxation shall be imposed equally upon all persons pursuing the same avocation, or that if those following the same calling are divided into classes for the purposes of taxation, the basis of classification shall be reasonable and founded on a real distinction, and not merely arbitrary or capricious. To this extent also, and no further, the principle applies to license fees or taxes imposed under the police power or for the better regulation of occupations supposed to have an important public aspect."

37 Cyc. pp. 729–733.

It is urged that the Legislature has only such powers of taxation as are conferred by section 9 of the Organic Act. But

this is a mistake. It is true that that section expresses the limit of its powers as to direct property taxation, but it is elsewhere granted the express power to raise revenue by license taxes (Compiled Laws Alaska 1913, § 410), and as a matter of fact that is the only method of taxation which the Legislature has adopted.

It is said that the system of taxation adopted is the exercise of special and not general legislation. This position is untenable. See Codlin v. Kohlhousen, 9 N. Mex. 565, 58 Pac. 499.

It is said that there has been no assessment, but—

"the cardinal rule in taxation, that whenever a tax is to be fixed by assessment the due assessment must precede any valid claim of such tax, does not apply to license taxes, except where the statute expressly so provides, or where the tax is according to value, or depends upon the ascertainment of person or value by some designated official." 25 Cyc. p. 628.

It is said that the fact that a lien on the property is reserved for the taxes shows that this is a property tax, but—

'in order to accomplish the certain collection of license taxes, the statute may declare that such taxes shall be a lien on the property assessed and entitled to be paid in preference to all mortgages and incumbrances." 25 Cyc. p. 628.

It is said there is no such business or line of business as fish traps, and that that fact, together with the fact that dummy traps are included, is proof positive that this is a property tax pure and simple—a tax on the res and not on the business. A dummy trap is a sham trap, not used for fishing, but designed simply to squat on and hold a trap location. None of the traps in question are dummy traps. The complaint seeks to recover the license tax from "fishing" traps, and, if the tax on them is valid, it would not matter that the tax on dummy traps is invalid.

It is true there is no such business or line of business as fish traps; but this is a mere "inaptitude of expression." The meaning is plain when the language is read in connection with that knowledge of the fishing business (one of the main enterprises in Alaska) common to all our people, and of which the Legislature will not be considered ignorant, and of which the court will take judicial notice. The Legislature meant that whoever conducts the business of fishing by means of fish traps

5 A.R.—22

must pay the license required by law. Although taxation statutes are to be strictly construed against the taxing power, yet they are to be construed to mean something, if possible, and are not to have their vitality frittered away by technical refinements.

The demurrer in each case will be overruled.