RAST, TAX COLLECTOR FOR DUVAL COUNTY, FLORIDA, *v.* VAN DEMAN & LEWIS COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF FLORIDA.

No. 41. Argued October 29, November 1, 2, 1915.—Decided March 6, 1916.

In a suit brought to restrain the enforcement of the statute of Florida of 1913, imposing special license taxes on merchants using profit sharing coupons and trading stamps on the ground that it violates the contract and the commerce clauses of, and the due process and equal protection provisions of the Fourteenth Amendment to, the Federal Constitution, and in which the District Court, under Judicial Code, § 226, granted a preliminary injunction holding that the statute violated the Fourteenth Amendment without stating on which provision it rested its decision or determining whether the statute violated other provisions of the Constitution, this court, on appeal from the order of injunction reversed and remanded with instructions to dismiss the bill as the statute does not offend any constitutional provisions under consideration, and *held* that:

As the bill shows that the conditions of complainant's business and property engaged therein are such that enforcement of the statute would produce irreparable injury it furnishes ground for equitable relief.

On this appeal this court can pass on the constitutionality of the statute on all of the grounds submitted for consideration.

A classification based on differences between a business using, and one not using, such coupons and stamps is not so arbitrary as to deny equal protection of the law.

A distinction in legislation does not deny equal protection of the laws if any state of facts can be conceived that will sustain it; and, even though such facts or their effect may be disputed, courts cannot arbitrate such differences of opinion.

It is for the legislature to discern and correct evils, not only of definite injury, but also such as are obstacles to greater public welfare if within legislative authority, as is the use of such coupons and stamps.

*Quære,* whether a statute relating to coupons and stamps re-

deemable exclusively in cash and credit on purchase is objectionable, the statute and all the schemes under consideration in this case involving other methods of redemption.

The use of such coupons and stamps in connection with retail sales to individual purchasers and consumers and not designed to be used by the manufacturer from another State to the State of distribution, are not transactions of interstate commerce, and regulations of the use of such coupons and sales otherwise legal do not interfere with, nor are they a burden, on interstate commerce.

Regulation by a State of the use of such coupons and stamps in connection with sales of tobacco is not prohibited by Rev. Stat., § 3394, as amended in 1897 and 1902; that section does not attempt to protect and enforce permission as to retail sales within the States.

Regulation of retail sales within the State does not in this case amount to an attempt to control transportation of the packages into the State from other States.

The statute is not unconstitutional as impairing obligation of contracts as it must be construed as having prospective operation, and as not affecting sales completed before its enactment.

If a business is subject to regulation by the State and the imposition of privilege taxes for carrying it on, contracts made in its conduct are also subject to such regulation.

There are many restrictions upon liberty of contract and business that do not amount to deprivation of liberty and property without due process of law.

In conducting retail business the use of such coupons and stamps is not advertising pure and simple. The latter is merely identification and description of the article sold, apprising of quality and space, while the former relies upon something other than the article itself.

Whether the use of such coupons and stamps can or cannot be called a lottery, it is still within the power of the legislature to consider it as having similar evils; and the regulation thereof by the legislature is not to be impeached and overruled by the courts on account of difference of opinion in regard to the conclusion reached.

The recognized rule that legislative opinion may not impose judicial opinion as to what are fundamental rights, does not determine supremacy in any given instance; but the power of the legislature to regulate conduct and contracts upon its conception of the public welfare is only subject to review by the courts when the legislation is unreasonable or purely arbitrary.

Even if the taxes imposed by the statute are prohibitory, the

right to carry on business by using such coupons and stamps is not
so protected by the Federal Constitution as to render such a tax a
violation of the due process provision of the Fourteenth Amendment.

The statute is not open to objection as depriving of liberty and
property without due process of law on account of severity of its
penalties intimidating against testing its legality. *Ex parte Young*,
209 U. S. 123, distinguished.

214 Fed. Rep. 847, reversed.

A STATUTE of Florida approved June 5, 1913 (Vol. 1,
p. 3), imposing licenses and other taxes, provides that mer-
chants, druggists and storekeepers shall pay a license tax
upon the cash value of the "stock of merchandise" of $3
for the first $1000 or fraction thereof, and $1.50 for each
additional $1000 or fraction thereof. The tax upon whole-
sale dealers is $1.50 upon each $1000. The statute has
this proviso: § 35, p. 35.

"Provided, further, That each and every person, firm
or corporation, who shall offer with merchandise bar-
gained or sold in the course of trade any coupon, profit-
sharing certificate, or other evidence of indebtedness or
liability, redeemable in premiums, shall pay annually a
State license tax of Five Hundred ($500.00) dollars and a
County license tax of two hundred and fifty ($250.00)
dollars in each and every county in which said business is
conducted or carried on, and if more than one place of
such business shall be operated by any person, firm or
corporation, a separate State and County license shall be
taken out for each such place; and no person, firm or cor-
poration shall offer with merchandise, bargained or sold
as aforesaid, any coupon, profit-sharing certificate or
other evidence of indebtedness or liability, redeemable
by any other person, firm or corporation than the one
offering the same without paying the above license for
each other person, firm or corporation who may redeem
the same. The license prescribed in this section shall be
in addition to other licenses prescribed by this Act. Any

person violating any of the provisions of this section, whether acting for himself or as the agent of another, shall on conviction thereof be punished by fine not exceeding one thousand ($1000) dollars or by imprisonment in the county jail not exceeding six months.

"Mercantile Agencies: Shall pay a license tax of one hundred ($100.00) dollars in each county in which an office is established.

"Merchants using trading stamps, shall pay a license tax of two hundred and fifty ($250.00) dollars for each place of business where they use such stamps.

"Merchant tailors shall pay a license tax of ten ($10.00) dollars for each place of business."

This suit was instituted by appellees (Florida merchants) against appellant Rast as tax collector of Duval County, Florida, and the tax collectors of each county in the State, the different State's attorneys, county solicitors and prosecuting attorneys of the circuits and counties of Florida. The purpose of the suit was to restrain those officers from proceeding under the statute or enforcing it. A preliminary and perpetual injunction was prayed and that the act be declared unconstitutional, illegal and void.

The bill is very elaborate and we select from its repetitions and condense the following: It alleges the various businesses in which the complainants are engaged. The Van Deman & Lewis Company is a Florida corporation and a wholesale grocer, doing business as such and selling groceries in certain counties in the State; Harkisheimer Company is also a Florida corporation and is a retail grocer; J. S. Pinkussohn Cigar Company is a corporation organized under the laws of South Carolina and is a wholesale and retail merchant buying and selling cigars and other tobacco products in the cities of Jacksonville and Pensacola, Florida. With these complainants were joined others, corporations and individuals, doing business in Florida.

It is alleged that complainants and each of them in the conduct of their business offer for sale and deal in various and numerous articles of merchandise manufactured and produced in other States than Florida by persons and corporations in those States and shipped into Florida to be sold therein, and who, for the purpose of advertising their businesses and increasing their sales, enclose in the packages in which the merchandise is put up for market and sale coupons, slips, certificates and other profit-sharing discount or premium tokens. The articles and the persons and companies producing them are enumerated.

The manner or method of disposing of and redeeming and taking up such coupons, etc., is alleged to be that the same are enclosed in packages or the wrappers thereof, or are a part of the wrappers, the packages are put into boxes, cases or other receptacles or enclosures and shipped by the manufacturer or producer from his place of business outside of Florida to the merchants in Florida, generally to a wholesale merchant or jobber, and are received by such in Florida and sold to the retail merchants in that State. The retail merchant sells them to his customers. When the latter have accumulated a sufficient number of the coupons, etc., to entitle them to receive a premium or article or payment therefor according to some list, catalogue or rule promulgated by the manufacturer, producer or original shipper, they send such coupons, etc., to such manufacturer, producer or original shipper, or in some instances, to a company or agency in some State other than Florida, where they are redeemed or paid or the articles which the purchasers have selected are sent to them in consideration of such coupons, etc., or for the same and a postage stamp or stamps or a small sum of money in addition thereto. And this in accordance with the contract, agreement or sale made to the purchasers by the manufacturer, shipper or producer outside of the

State. And it is alleged that the transactions so detailed, the manufacture without the State' and shipment to wholesale merchants within the State, the sale by the latter to retail merchants and by the latter again to customers, constitute interstate commerce.

That the form of the coupons, etc., varies and when its identity is secured as prescribed it is evidence that each purchaser of a package has bought a definite part of some article, to be selected by him or her from a certain list, the list showing a number of valuable articles which can be paid for by a certain number of the tokens and a two-cent stamp.

In another case there is an accumulation of the tokens which are to be sent to the redemption or coupon agency or corporation and exchanged for a valuable article of merchandise to be selected by the purchaser from a list or catalogue furnished him.

Another form of coupons, etc., is where each of them is good for a certain value, for instance, one-half cent in presents or premiums, the coupons being sent from the State of Florida to another State. There are also other forms in which the coupons or tokens are to be redeemed, paid for or used in the purchase of other articles of merchandise or in the accumulation of premiums or the like. All of the articles are known and largely used as legitimate articles of commerce and the transactions detailed are interstate commerce.

That divers forms of coupons, etc., in connection with the sale of merchandise are used by the merchants of the State substantially in similar form mentioned above and the payment or redemption is made by the Florida merchant in Florida, sometimes by the delivery of some valuable article of merchandise; sometimes by the payment of cash or the allowance of credit on account of purchases in the nature of a discount or for or on account of a certain amount having been purchased of the merchant by the

customer. The tokens are sometimes in the form of a cash register slip or memorandum.

. That the methods detailed are a form of advertising and the use of such coupons, etc., induces purchasers to trade more largely with and to make more of their purchases from complainants on account of the additional inducement of such coupons, etc.; that they increase the businesses of complainants and their profits and enable them to carry and sell stocks of goods covering the various articles of merchandise, and are of great importance and value to complainants in their several businesses; and if they are prevented from using them their businesses will be decreased to the amount of many thousands of dollars.

That at the time of the passage of the statute complainants had on hand large amounts and quantities of goods and if they are prevented from selling them in the manner detailed they will be subjected to great loss and damage, will be embarrassed and injured in their businesses and the value of their property destroyed or greatly lessened.

That the transactions and methods give an additional value to purchasers and they are substantially benefited thereby. That there is no element of gambling or chance in the transactions and nothing in them or their methods prejudicial to the public health, safety, morals or welfare.

That if there is a cessation of the transactions purchasers and customers who have received tokens but have not accumulated a sufficient number of them will be unable to have the same redeemed or paid or secure articles therewith. That about 500 merchants are similarly affected with complainants.

That certificates or tokens commonly called trading stamps and so designated in the statute are substantially like some of the tokens hereinbefore mentioned and

described and when delivered by retail merchants with the various articles sold to purchasers such purchasers are entitled to purchase or receive various valuable articles of merchandise, according to a list or catalogue, upon the presentation of the stamps to some person or company that has issued the trading stamps and that redeems them according to the provisions of such list or catalogue.

That under the statute every person, firm or corporation offering with merchandise any coupon, profit-sharing certificate or other evidence of indebtedness or liability redeemable in premiums is not only liable to pay the license tax for himself or itself but to pay such tax for every other person, firm or corporation who may redeem any such coupon, etc.

That such taxes are unreasonable, enormous and prohibitive on account of the number of articles sold, and by reason of the provision requiring complainants and each and every other person in like situation to pay the license tax to the State, and it is alleged with much circumstance that, from their number and the number of the articles that each sells, each and every person would be required to pay for license tax to the State and for one county or one place of business alone $15,000 per year or one-half that amount for six months or less time.

That as a result of the statute, if the tax be paid for only 100 persons or persons, firms or corporations, it would amount to $75,000 per annum; if for 1000 persons, firms or corporations in Florida for one place of business, it would amount to $750,000, and so on as to any number to be paid by and for each and every of such manufacturer, producer or shipper.

That such coupons, etc., enclosed in packages of tobacco and so delivered are authorized and rendered lawful by section 3394 of the Revised Statutes of the United

States as amended by § 10 of the act of July 24, 1897,
30 Stat. 151, 206, c. 11, and by § 2 of the act of July 1,
1902, 32 Stat. 714, 715, c. 1371.

That the provision of § 35 (the provision quoted
above) of the Florida statute and all provisions and
enactments for its enforcement are in violation of the
Constitution of the United States in that they violate
(1) the commerce clause, (2) the due process clause of
the Fourteenth Amendment, and (3) the equal protection
clause of that amendment. There are many specifica-
tions of the particulars and it is alleged: (1) The statute
discriminates between merchants in similar lines of busi-
ness; (2) between merchants who advertise in a certain
manner and those who advertise in another manner.
(3) The taxes are not upon the business or occupation
of complainants but upon the mere incidents of the busi-
ness and are an unreasonable and illegal interference with
the method and manner of conducting the business. (4)
The taxes are unreasonable, arbitrary, oppressive, dis-
criminatory and prohibitory for the reasons already de-
tailed and are far in excess of the amounts of taxes or
licenses fixed or imposed when other methods of adver-
tising or inducing custom are used and will prevent
complainants from carrying on their legitimate business.
(5) They are not productive of revenue, are in excess of
the profits of the businesses, and are in fact prohibitory.
(6) That the methods employed by complainants in no
wise affect the public health, morals or welfare, and the
imposition of the taxes is in no way a legitimate or lawful
exercise of the police power of the State. (7) That the
fines are so onerous, drastic, excessive and enormous as
to deter complainants in going on and doing business
as they have heretofore done and testing the validity of
the statute in a court of law.

That by the statute and in § 59 thereof a violation of
its provisions is made a misdemeanor and it is provided

in § 35 that for failure to pay any of the license taxes any person, whether acting for himself or as agent of another, may be imprisoned in the county jail, not exceeding six months.

It is further alleged that the statute impairs the obligations of the contracts entered into between complainants and their customers, in violation of clause 1, § 10, Article I, of the Constitution of the United States.

That the officers of the State threaten to enforce the statute and that the State's attorneys, county solicitors and prosecuting attorneys of the several circuits and counties of the State are respectively empowered and authorized to prosecute in the several courts of the State and such officers are threatening to prosecute divers of the complainants, and it is alleged that a multitude of prosecutions will be instituted, with seizures, sales and injury of property if a temporary restraining order be not granted. There is a prayer for such order and for a perpetual injunction.

A restraining order was issued. The defendants appeared specially and filed motions to dismiss the suit and as grounds thereof denied the allegations and implications of the bill as to the various grounds of infringement of the Constitution of the United States charged against the statute, and set up that complainants had a complete and adequate remedy at law. That the bill sought a restraint of the enforcement of a criminal statute of the State and to enjoin an alleged threatened seizure of property in the enforcement of the alleged illegal tax and the enforcement of the collection of a tax imposed by a statute of the State of a general and public nature

A motion was made for an interlocutory injunction, hearing upon which was referred to three judges Upon the hearing the injunction was ordered (214 Fed. Rep. 827), to review which this appeal has been prosecuted.

*Mr. Thomas F. West,* Attorney General of the State of Florida, for appellant:

The case presented is not within the cognizance of the equity jurisdiction of the Federal courts.

No ground for equitable interposition is shown to exist as against the tax collectors.

A court of equity has no jurisdiction to restrain the prosecuting officers named, because any action taken by them looking to the enforcement of the provisions of this statute is a criminal proceeding, and to enjoin them actually amounts to enjoining the State from proceeding in its own courts.

A part of the business conducted by the appellees being wholly intrastate, the enforcement of the statute cannot violate the commerce clause of the Federal Constitution.

The statute is not in contravention of the due process provisions of the Fourteenth Amendment to the Federal Constitution.

There is a just basis for the classification made by this statute and it does not deny due process of law.

In support of these contentions, see *Odlin* v. *Woodruff,* 31 Florida, 160; *Florida Packing Co.* v. *Carney,* 49 Florida, 293; *S. C.,* 51 Florida, 190; *Metcalf* v. *Martin,* 54 Florida, 531; *Cruickshank* v. *Bidwell,* 176 U. S. 73; *Shelton* v. *Platt,* 139 U. S. 591; *Allen* v. *Pullman Co.,* 139 U. S. 658; *Pac. Exp. Co.* v. *Seibert,* 142 U. S. 339; *Pittsburgh Ry.* v. *Public Works,* 172 U. S. 32; *Arkansas Loan Assn.* v. *Madden,* 175 U. S. 269; *Harrison* v. *Kersey,* 67 Florida, 24; *Bradley* v. *Richmond,* 227 U. S. 477; *Gundlin* v. *Chicago,* 177 U. S. 183; Florida Constitution, Art. V, §§ 5, 37; *Ex parte Nightengale,* 12 Florida, 274; *In re Sawyer,* 124 U. S. 200; *Fitts* v. *McGhee,* 172 U. S. 516; *Ex parte Young,* 209 U. S. 123; *Osborne* v. *Florida,* 164 U. S. 650; *Singer Machine Co.* v. *Brickell,* 233 U. S. 304; *Browning* v. *Waycross,* 233 U. S.

16; *Minnesota Rate Cases*, 230 U. S. 205; *Savage* v. *Jones*, 225 U. S. 501; *Plumley* v. *Massachusetts*, 155 U. S. 461; *Little* v. *Tanner*, 208 Fed. Rep. 605; *State* v. *Pitney*, 140 Pac. Rep. 918; *Lansburg* v. *Dist. of Col.*, 11 App. D. C. 512; *Humes* v. *Ft. Smith*, 93 Fed. Rep. 857; *Wilder* v. *Quebec*, Rap. Jud. Quebec, 25 C. S. 128; *Tap Line Cases*, 234 U. S. 1; *Loewe* v. *Lawlor*, 208 U. S. 274; *Otis* v. *Parker*, 187 U. S. 606; *Central Lumber Co.* v. *South Dakota*, 226 U. S. 157; *Purity Extract Co.* v. *Lynch*, 226 U. S. 192; *Lindsley* v. *Natural Carbonic Co.*, 220 U. S. 61; *Commonwealth* v. *Reinecke Coal Co.* (Ky.), 79 S. W. Rep. 287; *Noble State Bank* v. *Haskell*, 219 U. S. 104; Freund, Police Power, § 3; *Atchison &c. R. R.* v. *Mathews*, 174 U. S. 96; *McLean* v. *Arkansas*, 211 U. S. 539; *Ferguson* v. *McDonald*, 66 Florida, 496; *Afro-Am. Assn.* v. *State*, 61 Florida, 85; *Peninsular Ins. Co.* v. *State*, 61 Florida, 376; *Pullman Co.* v. *Knott*, 235 U. S. 23; *Citizens Tel. Co.* v. *Fuller*, 229 U. S. 322; *Quong Wing* v. *Kirkendall*, 223 U. S. 59; *Patsone* v. *Pennsylvania*, 232 U. S. 138; *Metropolis Co.* v. *Chicago*, 228 U. S. 61; *Atl. Coast Line* v. *Goldsboro*, 232 U. S. 548.

*Mr. Charles M. Cooper* for appellee:

Where a state statute is attacked as unconstitutional because violating the Federal Constitution and also as violating the constitution of the State, a Federal question is presented, the United States court has jurisdiction and may decide all questions involved.

The provisions of § 35 of the statute of Florida, complained of, are unconstitutional, illegal and void; they are contrary to and in violation of the Fourteenth Amendment as there is no just or reasonable classification upon which the license taxes are based.

Such classification has been repeatedly held by the Supreme Court of the United States to be unconstitutional and in violation of the Fourteenth Amendment.

The Supreme Court of Florida holds that such classifica-

tion renders the statute unconstitutional and void under the Constitution of the United States as well as that of Florida.

There is nothing in the use of coupons, profit-sharing certificates, etc., that is prejudicial to public health, safety, morals or welfare or that brings it under the police power of the State or justifies or authorizes its prohibition or suppression directly or by license taxes, and admit that said license taxes are not imposed for purpose of revenue or taxation.

Many decisions of Federal and state courts hold such classification and coupon taxes as involved in this case unconstitutional and void. See cases in highest courts of Massachusetts, California and New York.

The cases decided in the District of Columbia, even if correctly decided, do not sustain the constitutionality of the Florida statutes.

The imposition of such license taxes is in no way a legitimate exercise of any police power of said State.

The decisions of the Supreme Court of Florida establish also that the courts are the final judges of the validity of such legislation and that such provisions as are contained in this statute are invalid under the Constitution of the United States and of the State of Florida.

Frequency of attempts at similar legislation does not sustain its constitutionality.

The provisions of the Florida statute are contrary to and in violation of the commerce clause of the Federal Constitution and as the provisions covering interstate commerce are void, all the coupon license tax provisions are void.

The statute is unconstitutional in that it requires complainants and persons similarly situated to pay the license taxes of other persons, firms or corporations.

The statute attempts to deprive complainants, and all other persons in like situation, of the right to bestow a

gift or give a premium or share of profits of business, in violation of the Fourteenth Amendment.

The provisions of the statute which impose fines so great and imprisonment so severe as are fixed for nonpayment of said license taxes as to intimidate complainants from continuing to do business and testing the validity of said statute in a court of law are unconstitutional.

Unjust and arbitrary discrimination without any basis of reason and denial to complainants of equal protection of the laws contrary to the Fourteenth Amendment is further shown by grossly discriminating penalties which amount to confiscation of the goods complainants have on hand with inserts of coupons, certificates or the like.

The license taxes upon the face thereof are so exorbitant, onerous and unreasonable as to be manifestly prohibitory and void.

The statute is unconstitutional because contrary to the provisions of the Constitution against impairing the obligation of contracts.

In its virtual prohibition of tobacco insert coupons, certificates or the like, the Florida statute is contrary to the statutes of the United States which authorize such insertions.

MR. JUSTICE McKENNA, after stating the case as above, delivered the opinion of the court.

It was determined that the bill set forth grounds of equitable relief; that the condition of complainants' businesses and of the property engaged in them was such that the statute, if exerted against complainants and their property, would produce irreparable injury, citing *Ex parte Young*, 209 U. S. 123; *Dobbins v. Los Angeles*, 195 U. S. 223; *Davis & Farnum Mfg. Co. v. Los Angeles*, 189 U. S. 207. We concur in this view.

Passing on the constitutional questions involved, the

court was of opinion that the statute violated the Fourteenth Amendment and considered it unnecessary to decide whether there was an interference with interstate commerce.

It is not entirely clear upon what clause of the Fourteenth Amendment the court rested its judgment. The equality clause was selected for special comment. After stating the limitation upon legislation and the power of classification, the court proceeds to say: "Is there a just basis for the classification attempted in this section [§ 35] of the act?  Merchants, etc., all pay a tax according to the value of the stock carried by each, but if they sell goods for which coupons, etc., are given by themselves or others, then they must pay this additional tax for each place of business in each and every county in which said business is conducted or carried on.  And if goods are offered for sale with which coupons are given, redeemable by persons other than the seller, then this tax must be paid by him for each of said lines of goods.

"We can see no just basis for such classification.  It is an arbitrary selection of one merchant for the imposition of a 'greater burden' than that imposed on others in the same calling and condition."

But the court went farther and declared that "the use of coupons, etc., was an entirely legitimate method of advertising" and that such had been the ruling in state cases which were cited.  And excluding the application of cases adduced by defendants to sustain the statute as an exercise of the police power of the State, the court said: "As before pointed out, this coupon business is legitimate, in no way affecting the health or morals of the community."

Though it is not clear, as we have said, certainly not explicit in the opinion of the court, whether it decided the due process clause as well as the equal protection clause of the Fourteenth Amendment was violated by the statute,

we may assume that the violation of both was decided. It may be that the court thought that even though the use of coupons was a legitimate method of advertising and not affecting the health or morals of the community, it was nevertheless within the power of the State to license if the statute were free from discrimination, or it may be that the court considered that the two grounds interlocked and were dependent upon the same reasoning. However, the two grounds may be, indeed must be, taken into consideration as they are submitted for decision.

The ground of discrimination, simply and separated from the other attacks upon the statute, does not present much difficulty. The difference between a business where coupons are used, even regarding their use as a means of advertising, and a business where they are not used, is pronounced. Complainants are at pains to display it. The legislation which regards the difference is not arbitrary within the rulings of the cases. It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed. *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78. It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not within the competency of the courts to arbitrate in such contrariety. *Chi., Burl. & Quincy R. R.* v. *McGuire*, 219 U. S. 549; *German Alliance Ins. Co.* v. *Kansas*, 233 U. S. 389, 413, 414; *Price* v. *Illinois*, 238 U. S. 446, 452.

It is the duty and function of the legislature to discern and correct evils, and by evils we do not mean some definite injury but obstacles to a greater public welfare. *Eubank* v. *Richmond*, 226 U. S. 137, 142; *Sligh* v. *Kirkwood*, 237 U. S. 52, 59. And, we repeat, "it may make discriminations if founded on distinctions that we cannot pronounce unreasonable and purely arbitrary." *Quong*

*Wing* v. *Kirkendall*, 223 U. S. 59, 62, and the cases cited above.

Of course, an element to be considered is the authority of the legislature over the subject-matter, and this will best be examined in considering the contentions of complainants under the due process clause. Preceding that, however, are the contentions based on the commerce clause and the sanction which the Constitution gives to the integrity of contracts.

First, as pertinent to our discussion, are the specific schemes at which, it is said, the statute is directed, and we adopt complainants' description of them. The first is "where the Florida merchant issues his own coupon, certificate or cash register receipt and himself makes payment or redemption of the same, sometimes by the delivery of some valuable article of merchandise, sometimes by the payment of cash or allowance of credit on account of purchases, being in the nature of a discount, or for or on account of a certain amount having been purchased of the merchant by the customer." In a word, it is a case where the Florida merchant issues his own coupons and redeems them.

The second is "where the manufacturer or shipper outside of the State of Florida, in some other State of the Union, inserts such coupons or certificates in packages of his goods which he ships to Florida, and the ultimate purchaser or consumer takes such coupons or certificates from such packages and returns them to such manufacturer or shipper in such State outside of Florida, who gives a premium for them and sends such premium or proceeds of redemption to such ultimate purchaser or consumer in Florida who has forwarded to him such coupons or certificates." The merchandise so shipped into Florida is kept in stock by the merchants of the State and the coupons, etc., are delivered upon the sale of the merchandise to their customers, who have them redeemed in the.

manner described. That is, the coupons are redeemed by the person who originally issues them; the coupons, however, to repeat, being delivered by the Florida merchant as a part of the transaction between him and the purchaser from him at retail.

The third is "where the manufacturer or shipper in a State other than Florida inserts in the packages of his goods which he ships to Florida such coupons or certificates which are taken from the packages by the ultimate purchaser or consumer in Florida and sent to some company or agency in some State of the United States outside of the State of Florida other than the manufacturer or shipper of the goods, to be redeemed or paid, and the premium or proceeds thereof is returned by such company or agency to the person in Florida who has sent such coupons or certificates." This differs from the other two cases in that a premium company or agency other than the manufacturer or shipper himself is used for the redemption or payment of the coupons or certificates. But here again the Florida merchant is a factor because it is in completion of the sale by him at retail that the coupons are delivered to the purchasers.

, We are careful, by much repetition, to show the difference between the cases, to distinguish between the premium systems, and to show, as urged by counsel, that this case is not concerned with a license tax upon a trading stamp business pure and simple, a license upon companies engaged in such business being provided by another section of the statute.[1]

It is well here to observe, to avoid misunderstanding, that the redemption in the first scheme is "*sometimes by the payment of cash or allowance of credit on account of*

---

[1] "Sec. 55, p. 51. Trading Stamp Firms: Persons or firms or corporations known as trading stamp companies, shall pay a State license tax of one thousand ($1,000.00) dollars in each county where they transact any business."

*purchases, or for or on account of a certain amount having
been purchased of the merchant by the customer."* We are
not concerned with a statute directed solely at such method
of redemption or a business so confined. The Florida
statute imposes its license tax on coupons, etc., "redeem-
able in premiums." And therefore, whether any other
method of redemption—be it by giving a discount or
an allowance of credit simply—would be amenable to
objection we express no opinion. In all of the schemes
other methods of redemption are used and are attempted
to be justified.

With this comment we may say that all of the schemes
have a common character—something is given besides
that which is or is supposed to be the immediate incentive
to the transaction of sale and purchase, something of
value given other than it; and even as to the second and
third schemes, the transactions are only executed through
the purchase at retail. In other words, they are not de-
signed for or executed through a sale of the original pack-
age of importation but in the packages of retail and sale
to the individual purchaser and consumer. This fixes
their character as transactions within the State and not
as transactions in interstate commerce, and this is con-
ceded as to the first scheme; it is true as to the second
and third schemes. All of the schemes have their influence
and effect within the State. Nor is such influence and
effect changed or lessened by the redemption of the tokens
outside of the State.

The transactions, therefore, are not in interstate com-
merce. The sales, as we have said, are not in the packages
of that commerce, they are essentially local sales, schemes
consummated by such sales, and it is upon them and on
account of their effect that the statute has imposed its
license tax, and not upon the shipment into the State
nor their disposition in the packages of importation.
Of course, there is shipment to Florida merchants but

for the disposition of the merchandise in retail trade. The schemes contemplate such disposition and are executed by it. Detach the importations from the retail sale, consider only the transportation to the State of merchandise in its original package, being sold therein in such package, and there may, indeed, be interstate commerce; but so detached and so considered the importations are left without purpose, the schemes without execution. Indeed, complainants contend for the right not only of importations in the original package containing the coupons but the disposition of the goods and coupons through the retail merchant. This, we repeat, has no protection in the commerce clause.

Nor is the regulation of the statute prohibited by § 3394, Rev. Stat. as amended in 1897 (July 24, c. 11, § 10, 30 Stat. 151, 206) and 1902 (July 1, c. 1371, § 2, 32 Stat. 714, 715). Section 3394 provides for a tax on cigars and cigarettes. By the amendment of 1897 it was forbidden to pack in, attach to or connect with any package of tobacco or cigarettes anything but the wrappers, and it was futher provided that there should not be affixed to, or branded, stamped, marked, written or printed upon the packages or their contents any promise or offer of, or any order or certificate for, any gift, prize, premium, payment, or reward. This provision upset the practice of manufacturers and was attacked on the ground that it was beyond the power of Congress under the Constitution to enact, the prohibited practice being a method of advertising. The provision was sustained. *Felsenhead* v. *United States,* 186 U. S. 126, affirming 103 Fed. Rep. 453. In 1902 the paragraph containing the provision was amended so as to forbid the enclosure or attachment to the packages of "any paper, certificate, or instrument purporting to be or representing a ticket, chance, share or interest in, or dependent upon the event of a lottery,

or any indecent or immoral picture, representation, print or words."

Let it be granted that this provision permitted the enclosure in the package of tobacco of tokens of the character with which this case is concerned. It goes no farther nor does it purport to go farther. It does not attempt to protect and enforce the permission to the retail sales of packages in the State. It might not legally have such effect if attempted; and such attempt will not lightly be inferred. *Savage* v. *Jones*, 225 U. S. 501; *Standard Food Co.* v. *Wright*, 225 U. S. 540. The statute of Florida does not seek to control the interstate transportation of the packages, it controls only their sale in the State through the retail merchant, or, it may be, directly to the individual consumer for the purpose described, and in both cases for the ultimate redemption of the tokens delivered with the sale.

*McDermott* v. *Wisconsin*, 228 U. S. 115, is not applicable. There Congress, for the effective execution of the Food and Drugs Act, defined what the "package" of commerce should be, and necessarily any law which conflicted with it was void. In the case at bar there is no such definition. There is only permission to insert in the package whatever the manufacturer of tobacco may choose, with a single exception. There is no compulsion of use, and omission to avail of the permission has no effect upon the purpose of Congress in the enactment of the revenue laws which provide for the packing of tobacco products.

The contract clause of the Constitution is also unavailable to complainants. The statute must be held to have prospective operation. Sales completed before its enactment are unaffected by it. We say "sales completed," and by this we mean those in which the right of redemption according to some of the schemes has accrued as distinguished from what is alleged in the bill as "the

understanding and expectation" arising from one or more
sales that complainants would continue to sell to such
purchasers other articles so that they might be able to
accumulate tokens and use them.   It cannot be said that
there is an obligation to continue sales or an obligation to
continue purchases.   Besides, as the business is subject
to regulation the contracts made in its conduct are sub-
ject to such regulation.   *Louis. & Nash. R. R.* v. *Mottley,*
219 U. S. 467, and *N. Y. Central R. R.* v. *Gray,* 239 U. S.
583.

Having disposed of the other contentions of complain-
ants, we are brought to a consideration of the question
whether the statute of Florida offends the due process
clause of the Fourteenth Amendment of the Constitution.
In other words, does the statute interfere with the busi-
ness liberty of complainants?   Is it an illegal meddling
with a lawful calling and a deprivation of freedom of
contract?   This is the contention, and it is attempted
to be supported by the assertion that the schemes detailed
in the bill are but a method of advertising and, as such,
mere allurements to customers, not detrimental in any
way to the public health and morals, nor obstructive of
the public welfare; but are a means of enterprise, mere
incidents of the businesses of complainants and as bene-
ficial to their customers as to them.   And besides that
they are but a method of giving discount, practically
in some instances a rebate upon the price, and in others
an equivalent gift of some article that may attract the
choice of the purchaser, the choice being free and the
article of definite utility and value.

These contentions have the support of a number of
cases.   They are opposed by others, not nearly so numer-
ous as the supporting cases but marking a change of opin-
ion.   Both sets of cases indicate by the statutes passed
upon a persistent legislative effort against the schemes
under review or some form of them, beginning in 1880 and

repeated from time to time until the statute in controversy was passed in 1913.[1] In such differences between judicial and legislative opinion where should the choice be? That necessarily depends upon what reasoning judicial opinion was based. We appreciate the seriousness of the situation. Regarding the number of the cases only, they constitute a body of authority from which there might well be hesitation to dissent except upon clear compulsion.

The foundation of all of them is that the schemes detailed are based on an inviolable right, that they are but the exercise of a personal liberty secured by the Constitution of the United States and distinguished from other lawful exercise of business contracts and activity by a method of advertising and lawful inducements to an increased custom and that in them there is no element of chance or anything detrimental to the public welfare. But there may be partial or total dispute of the propositions. And it can be urged that the reasoning upon which they are based regards the mere mechanism of the schemes alone and does not give enough force to their influence upon conduct and habit, not enough to their insidious potentialities. As to all of which not courts but legislatures may be the best judges and, it may be, the conclusive judges.

This may be illustrated. A lottery of itself is not wrong, may be fairer, having less of overreaching in it, than many of the commercial transactions that the Constitution protects. All participants in it have an equal chance; there is no admonishing caveat of one against the other. And at one time it was lawful. It came to be condemned by experience of its evil influence and effects. It is trite to say that practices harmless of themselves may, from

---

[1] It is said that 23 States have attempted either to prohibit or to license the selling or use of trading stamps and coupons. And there has been like legislation for the District of Columbia and the Territory of Hawaii.

circumstances, become the source of evil or may have evil tendency. *Murphy* v. *California*, 225 U. S. 623.

But no refinement of reason is necessary to demonstrate the broad power of the legislature over the transactions of men. There are many lawful restrictions upon liberty of contract and business. It would be an endless task to cite cases in demonstration, and that the supplementing of the sale of one article by a token given and to be redeemed in some other article has accompaniments and effects beyond mere advertising the allegations of the bill and the argument of counsel establish. . Advertising is merely identification and description, apprising of quality. and place. It has no other object than to draw attention to the article to be sold, and the acquisition of the article to be sold constitutes the only inducement to its purchase. The matter is simple, single in purpose and motive; its consequences are well defined, there being nothing ulterior; it is the practice of old and familiar transactions and has sufficed for their success.

The schemes of complainants have no such directness and effect. They rely upon something else than the article sold. They tempt by a promise of a value greater than that article and apparently not represented in its price, and it hence may be thought that thus by an appeal to cupidity lure to improvidence. This may not be called in an exact sense a "lottery," may not be called "gaming"; it may, however, be considered as having the seduction and evil of such, and whether it has may be a matter of inquiry, a matter of inquiry and of judgment that it is finally within the power of the legislature to make. Certainly in the first instance, and, as we have seen, its judgment is not impeached by urging against it a difference of. opinion. *Chic., Burl. & Quincy R. R.* v. *McGuire* and *German Alliance Ins. Co.* v. *Kansas*, *supra*. And it is not required that we should be sure as to the precise reasons for such judgment or that we should certainly know them

or be convinced of the wisdom of the legislation. *Southwestern Oil Co.* v. *Texas*, 217 U. S. 114, 126, 127. See also *Munn* v. *Illinois*, 94 U. S. 113, 132.

But it may be said that judicial opinion cannot be controlled by legislative opinion of what are fundamental rights. This is freely conceded; it is the very essence of constitutional law, but its recognition does not determine supremacy in any given instance. "While the courts must exercise a judgment of their own, it by no means is true that every law is void which may seem to the judges who pass upon it excessive, unsuited to its ostensible end, or based upon conceptions of morality with which they disagree. Considerable latitude must be allowed for differences of view as well as for possible peculiar conditions which this court can know but imperfectly, if at all. Otherwise a constitution, instead of embodying only relatively fundamental rules of right, as generally understood by all English-speaking communities, would become the partisan of a particular set of ethical or economical opinions, which by no means are held *semper ubique et ab omnibus*." *Otis* v. *Parker*, 187 U. S. 606, 608, 609.

That case illustrated the reach of the power of government to protect or promote the general welfare. It sustained a provision of the constitution of the State of California which made void all contracts for the sale of the stock of corporations on margin or to be delivered at a future day. The practice had been common, its evil was disputed. It was attempted to be justified by argument very much like those advanced in the case at bar, but this court decided that the legislative judgment was controlling.

Even more pertinent in illustration of the power of the States as unaffected by the Fourteenth Amendment is *Central Lumber Co.* v. *South Dakota*, 226 U. S. 157. A statute of the State was sustained which provided that any one engaged in the manufacture, production or dis-

tribution of any commodity in general use, who should intentionally, for the purpose of destroying the competition of any regular, established dealer, discriminate between different places by selling such commodity at a lower rate in one place than such person charged in another, after equalizing the distance from the point of production, should be guilty of a crime. Freedom of conduct was restricted by the statute which had its incentive in trade advantages. It was the judgment of the legislature that such practice was an impediment to the public welfare. · The legislative judgment was sustained against the attack, among others, that the law was an infringement of freedom of conduct and contract.

In *Keokee Coke Co.* v. *Taylor,* 234 U. S. 224, the company issued scrip payable in merchandise only from its store as· an advance of monthly wages in payment of labor performed. A statute of the State (West Virginia) prohibited the issue of any order for the payment of labor unless it was redeemable in money. The statute was assailed on the ground that it interfered with the freedom of contract. It will be observed that there was a consideration for the order payable in merchandise; it was a payment in advance, and hence it was asserted that the statute was an injury to the employees and employers. There were elements in the transactions of apparent advantage to both and it would seem to have been within the liberty of both to contract upon an estimate of the value of that advantage. It was deemed an evil by the legislature and this court sustained its judgment.

In *Erie R. R.* v. *Williams,* 233 U. S. 685, a law of the State of New York required railroad companies to pay their employés semi-monthly and prohibited them from making contracts which should vary the time of payment. The law was sustained mainly upon the ground that it was an amendment of the charter of the corporation, but the extent of the police power was adverted to and the com-

petency of the legislature exercising that power to enact
the legislation. The incentive of the legislation was the
benefit which accrued to the employees by the period of
payment. The public welfare was deemed to be promoted
by it.

Other cases might be cited and, it may be, of more
pertinent application, which, from their number and
instances, would seem to have uttered the last necessary
word upon the power of the legislature to regulate conduct
and contracts and in the exercise of the power to classify
objects, upon its conception of the public welfare, the
right of review to be exerted by the courts only when the
legislation is unreasonable or purely arbitrary.

Complainants allege that the license tax which the
statute imposes is of prohibitory character and assert
that they are exercising inviolable rights and privileges
which the excess of the tax prevents in violation of the
Fourteenth Amendment; they contend that hence the
statute is invalid.

It is not certain from the allegations of the bill that the
tax is of the asserted character, but granting it to be so we
have shown that the business schemes described in the bill
are not protected from regulation or prohibition by the
Constitution of the United States. *Lawton* v. *Steele,* 152
U. S. 133; *Booth* v. *Illinois,* 184 U. S. 425; *Otis* v. *Parker,*
187 U. S. 606; see also *Dobbins* v. *Los Angeles,* 195 U. S.
223, 238; *Murphy* v. *California,* 225 U. S. 623; *Postal
Telegraph Co.* v. *Charleston,* 153 U. S. 692, 699; *McCray* v.
*United States,* 195 U. S. 27; *Kehrer* v. *Stewart,* 197 U. S. 60;
*Hammond Packing Co.* v. *Montana,* 233 U. S. 331.

The contention that the statute intimidates against a
contest of its legality by the severity of its penalties and is
therefore unconstitutional on that ground within the rul-
ing in *Ex parte Young,* 209 U. S. 123, is not justified.

*Order reversed and case remanded with directions to dismiss
the bill.*