## ALASKA FISH SALTING & BY-PRODUCTS CO. v. SMITH.

(First Division.  Juneau.  June 7, 1919.)

Nos. 1793–A, and 1816–A.

1. **Licenses ☞7(8)—Fish—Taxation.**

A manufacturer of fish oil, fertilizer, and fish meal from herring may not complain that he is doubly taxed, first by the United States, and then by the territory of Alaska, in view of the provisions of the Act of Congress of August 24, 1912, § 3, giving the territorial Legislature power to impose license tax in addition to the Federal license tax on the same trade and business.

2. **Statutes ☞121(7)—Title—Constitutional Law.**

The territorial Legislature of Alaska passed an act. entitled "An act to amend sections 1 and 2 of chapter 76, Laws of Alaska 1915, entitled 'an act to establish a system of taxation, create revenue,'" etc.  On demurrer, *held*, the said act is not in violation of that section of the Organic Law of Alaska that "no law shall embrace more than one subject, which shall be expressed in its title."

3. **Constitutional Law ☞287—Taxation.**

Congress gave the territorial Legislature of Alaska power to impose "other and additional taxes or licenses," on trade and business in Alaska, without any limitation thereon.  *Held*, the power to levy the tax is the power to destroy, and not subject to the control of the courts, as being in contravention of the Fifth and Fourteenth Amendments to the Constitution of the United States.

**4. Licenses ⊚⇒7(2)—Constitutional Law—Taxation.**

Having the unlimited power to levy license taxes on trades and business in Alaska, the Legislature may itself choose the lines of business upon which it will levy the taxes, and it is not the function of the court to control its discretion. The Legislature, in its selection of the objects to be taxed, may favor some industries over others.

Case affirmed, 255 U. S. 44, 41 Sup. Ct. 219, 65 L. Ed. 489.

The gist of the complaints in these cases is:

First. That plaintiff is, and since 1886 has been, engaged in the business of the manufacture and production of fish oil, fertilizer, fish meal, and by-products from herring fish in whole and in part, and has a valuable plant for that purpose, and that said business is useful, legitimate, and commendable, but that it is necessary that the same should be conducted on a small margin of profit.

Second. That the Legislature enacted the following acts, to wit: Act of May 1, 1913, Session Laws of 1913, chapter 52, page 107; Act of April 29, 1915, Session Laws 1915, chapter 76, page 185; Act of May 3, 1917, Session Laws 1917, chapter 74, page 201—all of which said acts levy license taxes on the business of fisheries, etc. That said acts are void, because they amend, alter, and modify the fishing laws of the United States, and because they levy an annual tax in excess of 1 per cent. valuation, and because the said taxes are not uniform and are not levied under general laws, nor based upon assessment according to actual value of property, and because said acts deprive the plaintiffs of their property without due process of law, and so are contrary to the Fifth and Fourteenth Amendments.

The act of 1917 is said to be void because, in addition to the foregoing alleged reasons, its object and purpose is "to abolish and prohibit fish oil works using herring in whole or in part," and that object is not expressed in the title, and because the penalty for nonpayment of the taxes levied is so severe that the plaintiff would, if the act be sustained, be financially ruined.

Third. That plaintiff has paid the taxes levied for the years 1917–1918, respectively, under duress and protest. The prayers are that the taxes so paid may be recovered.

⊚⇒See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The complaints are alike in their essential averments, although differing as to the allegations concerning the gross output and net profits of the business for the years 1917–1918, and as to the amounts sought to be recovered.

Defendant demurred to the complaints on the grounds that there was a defect of parties, and that the complaint did not state facts sufficient to constitute a cause of action. At the argument on the demurrer the objection that there was a defect of parties was expressly waived, as was also any contention that the complaint was insufficient in its allegations of duress, or in any particular other than in its allegations as to the unconstitutionality of the tax; so that the only question before the court at this time is this: Does the complaint state facts sufficient to show that the tax is unconstitutional?

R. E. Robertson, of Juneau, for plaintiff.

George B. Grigsby, Atty. Gen., for defendant.

JENNINGS, District Judge. (1) It is assigned and argued that the Acts of 1913, 1915, and 1917, supra, contravene the Organic Act, because, as alleged:

(a) They amend, alter, and modify the fishing laws of the United States.

The basis for this contention is not apparent. The law of the United States imposing a tax of 10 cents per barrel on fish oil works and 20 cents per ton on fertilizer works (section 2569, C. L. Alaska 1913) cannot be said to be a fishing law of the United States. It is a "tax on the pursuit of a certain line of business." The territorial statutes in question provide for a license tax, not on fishing, but on the pursuit of a certain line of business. So far as these statutes are concerned, one may catch and sell all the herring one chooses without liability to pay a tax.

(b) Because the acts levy an annual tax in excess of 1 per cent. valuation; and

(c) Because the taxes are not uniform, nor under general laws, nor based upon assessment of actual valuation.

Objections analogous to (b) and (c) were fully passed upon in the case of Territory v. Alaska Pacific Fisheries, 5 Alaska, 325, affirmed in Hoonah Packing Co. v. Alaska, 236

Fed. 61, 149 C. C. A. 271. That decision was adverse to plaintiff's contention.

(2) The act of 1917 is further attacked:

(d) Because its object and purpose is to abolish and prohibit fish oil works using herring in whole or in part, and that object is not expressed in the title.

The constitutional inhibition is as follows:

"No law shall embrace more than one subject, which shall be expressed in its title." Organic Act, § 8, 37 Stat. 514.

The title of the act in question is "An act to amend sections 1 and 2 of chapter 76, Laws of Alaska 1915, entitled 'An act to establish a system of taxation, create revenue,'" etc.

I cannot see that the act in question does anything more than that which by its title it purposes to do—that is, amend the former act. This amendment is to the effect that taxes are increased on some industries, and some industries (fish oil works among the number) theretofore untaxed are made the subject of taxation.

(e) Because:

"It levies double taxation, to wit, $2 per barrel on fish oil manufactured from herring, and $2 per ton on fish meal and fertilizer manufactured from herring, while at the same time defendant must pay 10 cents per barrel on fish oil, and 20 cents per ton on fish meal, under sections 259 and 2569, C. L. 1913."

In the case above referred to, to wit, Territory v. Alaska Pacific Fisheries, 5 Alaska, 325, and 236 Fed. 52, 149 C. C. A. 262, a like contention was made, and was decided adversely; the upper court saying:

"And thus by the Organic Act those general provisions for the protection of the fish which we find in the act of 1906 were kept in force without possibility of alteration, amendment, or repeal by the territorial Legislature, and the specific license tax provided by the act of 1906 was kept in force, but with power transferred to the Legislature to impose, if it should see fit, other and additional license taxes."

Other contentions which will be here noticed are:

That the act is confiscatory, in that in 1917 the tax amounted to 5.6 per cent. of gross receipts, and 113.64 per cent. of the net profits, obtained by plaintiff from the manufacture of fish oil, and 2.92 per cent. of gross receipts, and 28.12 per

cent. of net profits, obtained by plaintiff from the manufacture of fish meal and fertilizer, and that in 1918 the tax on gross and net receipts, respectively, on the above items, respectively, amounted to the following, to wit:    9.31, 84, .4.5, and 8.18.

A tax of 10 per cent. on gross output is not confiscatory, and the "net profits" is necessarily a question of economy and efficiency of method.

That the penalty for nonpayment of the tax is so severe as to prohibit a testing of a tax in a court of law.

It will be time enough to determine that question when some attempt is made to collect the penalty.   Flint v. Stone, 220 U. S. 177, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312.   Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764, and Cotting v. K. C. Stockyards, 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92, cited by plaintiff, do not apply to a case like this.   Rast v. Van Deman, 240 U. S. 357, 36 Sup. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455.

That the act is not a revenue measure.

It purports to be a revenue measure, and it levies a tax on a taxable res, and the tax is demanded for a lawful public purpose.   Moreover, it is alleged in the complaint that said tax was levied, * * * "but *solely* for the purpose of raising revenue and as a revenue measure, and for the *further* purpose," etc.   (Complaint, par. VI.)

That the tax is discriminatory.

The tax bears equally upon all persons engaged in the line of business which is taxed.

The main contention of plaintiff is that the act of 1917 is in contravention of the Fifth and Fourteenth Amendments of the Constitution, in that it results in, and was intended to result in, the deprivation of property without due process of law; that the manufacture of fish oil from other fish than herring is not taxed at all, and that "there are no existing distinctions which differentiate the business of plaintiff from the business of making fish oil out of other fishes than herring"; and that the singling out of plaintiff's business was for the purpose of destroying that business, etc.

By the demurrant the court is cited to the case of Mc-

6 A.R.—12

Cray v. United States, 195 U. S. 27, 24 Sup. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561 (the oleomargarine case), which reiterates the oft-repeated assertion that "the power to tax is the power to destroy," and the equally frequent assertion that, once it be conceded that the taxing power has been exercised, no court can inquire into the motives and purposes of the Legislature in enacting the legislation. The justice who wrote the opinion has this to say in Brushaber v. Union Pac. R. Co., 240 U. S. 1, 24, 36 Sup. Ct. 236, 244 (60 L. Ed. 493, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414):

"So far as the due process clause of the Fifth Amendment is relied upon, it suffices to say that there is no basis for such reliance since it is equally well settled that such clause is not a limitation upon the taxing power conferred upon Congress by the Constitution; in other words, that the Constitution does not conflict with itself by conferring upon the one hand a taxing power and taking the same power away on the other by the limitations of the due process clause. * * * *And no change in the situation here would arise even if it be conceded, as we think it must be, that this doctrine would have no application in a case where although there was a seeming exercise of the taxing power, the act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation but a confiscation of property, that is, a taking of the same in violation of the Fifth Amendment, or, what is equivalent thereto, was so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the same conclusion.*"

The opinion in the McCray Case is an exhaustive review of authorities, but I cannot see that it is very definite as to what is a proper test by which can be determined the question as to whether an act purporting to be a revenue act is really and truly a revenue act or an act of confiscation under the guise of a revenue act, unless it be that the whole matter turns on the question as to the "reasonableness" of the classification. If the question cannot be determined by a consideration of the motives and purposes of the individual legislators (and it seems that it cannot—McCray v. U. S., supra, 195 U. S. 61, 24 Sup. Ct. 778, 49 L. Ed. 78, 1 Ann. Cas. 561, second paragraph), nor by a consideration of the fact that the tax is oppressive or prohibitive (Id., 195 U. S. 60, 24 Sup. Ct. 778, 49 L. Ed. 78, 1 Ann. Cas. 561), what is there left by which it may be determined? And yet "one is in danger of losing himself in the terms reasonable

and arbitrary." Grainger v. Douglas Park Jockey Club, 148 Fed. 525, 78 C. C. A. 211, 8 Ann. Cas. 997.

In view of the almost omnipotent character of the taxing power, one is impelled (by a process of elimination) to the conclusion that, when there is no distinction made between members of a class, the decisive test lies in the presence or absence of a sufficient basis for classification. That being so, the question in the case at bar is not difficult of solution, when it is considered how strong a case must be made before a court will declare an act of the Legislature to be unconstitutional.

### Classification.

As throwing a side light on what is *not* a proper basis for classification, reference might be made to this language of Mr. Justice Brown, in American Sugar Refining Co. v. Louisiana, 179 U. S. 89, 92, 21 Sup. Ct. 43, 44 (45 L. Ed. 102), to wit:

"Of course, if such discrimination were purely arbitrary, oppressive or capricious, and made to depend upon differences of *color, race, nativity, religious opinions, political affiliations or other considerations having no possible connection with the duties of citizens as taxpayers,* such exemption would be pure favoritism, and a denial of the equal protection of the laws to the less favored classes."

But here again a question is left open by the words "or other considerations having no possible connection with the duties of citizens as taxpayers."

In the case of Rast v. Van Deman, supra, however, the Supreme Court says:

"It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 78. It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not within the competency of the courts to arbitrate in such contrariety. Chi., Burl. & Quincy R. R. v. McGuire, 219 U. S. 549; German Alliance Ins. Co. v. Kansas, 233 U. S. 389, 413, 414; Price v. Illinois, 238 U. S. 446, 452. It is the duty and function of the Legislature to discern and correct evils, and by evils we do not mean some definite injury but obstacles to a greater public welfare. Eubank v. Richmond, 226 U. S. 137, 142; Sligh v. Kirkwood, 237 U. S. 52, 59. And, we repeat, 'it may make discriminations if founded on distinctions that we cannot pronounce unreasonable and purely arbitrary.' Quong Wing v. Kirkendall, 223

U. S. 59, 62, and the cases cited above. Of course, an element to be considered is the authority of the Legislature over the subject-matter."

Plaintiff contends:

That "there are no existing distinctions which differentiate the business of plaintiff from the business of making fish oil out of other fishes than herring, and that the business of making fish oil and fertilizer out of other fishes than herring is not taxed at all."

Now, not only is it "not inconceivable" that there is any basis for classification, but, on the contrary, to persons familiar with the fishing industry in Alaska a very probable basis for classification immediately suggests itself, and that is this: While the herring is a food fish for man, yet so, also, is the salmon. It is a well-known fact that the salmon feeds largely on the herring (24 Encyclopædia Britannica, page 83, 2d column, middle), and it is so easily conceivable as to be said to be probable that the Legislature considered that the using of herring in large quantities for the manufacture of fish oil and fertilizer so depletes the food supply of what the Legislature considered the more valuable and desirable "food for man" fish (that is, the salmon) as to seriously diminish the "run" of the latter. If so, that fact alone would constitute a sufficient basis for classification. 240 U. S. 357, 36 Sup. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455, supra.

That there is a gross and patent inequality in the amount of the tax levied on this particular line of business, as compared with the tax levied on other lines of business, the allegations of the complaints, if true, do not permit of a doubt; but, nevertheless, all persons following this particular line of business are taxed alike, and if it cannot be said that the classification of the lines of business is wanting in a reasonable "basis for classification," and if that consideration be the decisive test, then it cannot be said that the act is "so arbitrary as to constrain to the conclusion that it was not the exercise of classification but confiscation."

The Legislature may itself choose the lines of business upon which it will levy the taxes, and it is not the function of the court to control its discretion. McCray v. U. S., supra. The Legislature, in its selection of objects to be taxed, may favor some industries over others. In the case of Quong

Wing v. Kirkendall, 223 U. S. 62, 32 Sup. Ct. 192, 56 L.
Ed. 350, the state of Montana laid a prohibitive tax on hand
laundries. The "hand laundrymen" objected that they were
being "taxed out of business," whereas there was no rea-
sonable "basis for classification" by which their industry
could be differentiated from steam laundries. The court said:

"A state does not deny the equal protection of the laws merely by
adjusting its revenue laws and taxing system in such a way as to
favor certain industries or forms of industry."

True, the court intimated that had it been assigned and
successfully maintained that the legislation was "aimed at
the Chinese" their ruling might have been different; but,
if so, in that event, the case would have been one of a dis-
tinction made on account of color, race, nativity, etc., spok-
en of in American Sugar Refining Co. v. Louisiana, 179 U.
S. 92, 21 Sup. Ct. 43, 45 L. Ed. 102, supra.

It does not appear that the act in question here is "so ar-
bitrary as to constrain to the conclusion that it was not the
exercise of the taxing power, but a confiscation of property."

Counsel for plaintiff cites many cases to the effect that,
where a business is in itself lawful, the law-making power
may not abolish that business or discriminate against it. As
fairly typical of the cases so cited is the case of Connolly
v. Union Sewer Pipe Co., 184 U. S. 541, 22 Sup. Ct. 431,
46 L. Ed. 679. In that case the exercise of the taxing pow-
er was not brought into question, but rather a statute of the
state of Illinois providing that the combination of certain
enterprises were "bad trusts" and that contracts with them
were unenforceable—expressly providing, also, that the in-
hibition "shall not apply to agricultural products or live stock
in the hands of the producer or raiser." The court held
that such a discrimination could not be sustained. On page
562 of 184 U. S., on page 440 of 22 Sup. Ct. (46 L. Ed. 679),
however, the court expressly says:

"A state may, in its wisdom, classify property for purposes of
taxation, and the exercise of its discretion is not to be questioned
in a court of the United States, so long as the classification does not
invade rights secured by the Constitution of the United States.
But *different* considerations control when the state, by legislation,
seeks to regulate the enjoyment of rights and the pursuit of callings
connected with domestic trade. * * * It is one thing to exert
the power of taxation so as to meet the expenses of government,

and at the same time, indirectly, to build up or protect particular interests or industries. It is quite a different thing for the state, under its general police power to enter the domain of trade or commerce, and discriminate against some by declaring that particular classes within its jurisdiction shall be exempt from the operation of a general statute making it criminal to do certain things connected with domestic trade or commerce."

In Nicol v. Ames, 173 U. S. 509, 19 Sup. Ct. 522, 43 L. Ed. 786, the Supreme Court says:

"The power to tax is the one great power upon which the whole national fabric is based. It is as necessary to the existence and prosperity of a nation as is the air he breathes to the natural man. It is not only the power to destroy, but it is also the power to keep alive."

The demurrers will be sustained.

⊛═See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes