The DOG POUND, LLC, Plaintiff,

v.

CITY OF MONROE, Defendant.

Case No. 09–13104.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 30, 2012.

---

428

Erik G. Chappell, Julie Douglas, Lyden, Liebenthal & Chappell, Ltd., Sylvania, OH, for Plaintiff.

John J. Gillooly, Timothy J. Jordan, Garan Lucow, Detroit, MI, for Defendant.

*OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING CASE*

DAVID M. LAWSON, District Judge.

The plaintiff originally sued the City of Monroe over provisions in a city ordinance that effectively prohibited the plaintiff's proposed operation of a portable hotdog vending business in highly-trafficked areas of the City's downtown district, which the ordinance described as a "restricted area." While the lawsuit was pending, the City amended its ordinance to delete some, but not all, of the provisions the plaintiff found offensive. The plaintiff applied for a preliminary injunction, which the Court denied in a written opinion that discussed the facts and the history and terms of the ordinance. *Dog Pound, LLC v. City of Monroe*, 2011 WL 2669656 (E.D.Mich. July 8, 2011). Thereafter, the parties engaged in extensive talks in an effort to settle the case, without success. The plaintiff also filed an amended complaint, and later a second amended complaint, raising claims under the Equal Protection Clause, the Dormant Commerce Clause, and the Due Process Clause, seeking a declaratory judgment that the ordinance's restrictions violate the Constitution and do not apply to the plaintiff, a writ of mandamus ordering the City to issue a license to operate the cart without restrictions, and money damages for lost profits during the time the plaintiff allegedly has been unable to operate the cart in the city due to the ordinance.

The City has moved for summary judgment. The Court heard oral argument on November 20, 2012. In its response to the motion, the plaintiff appears to have stepped back from its claim under the Due Process Clause, and continues to press its equal protection and Dormant Commerce Clause claims, despite the Court's rejection of those arguments in its prior opinion. The Court now concludes that the City of Monroe's ordinances as applied to the plaintiff's permitting efforts does not offend the Constitution, and the plaintiff's claims under 42 U.S.C. § 1983 must fail. Therefore, the Court will grant the City's

motion for summary judgment and dismiss the case.

## I.

The facts of the case have been set out in the Court's previous opinion, referenced above, and need not be repeated here. In that opinion, the Court held that the amended ordinance did not violate either the Equal Protection or Dormant Commerce clauses. The Court also noted that the plaintiff might have a claim under the Due Process Clause if the *only* purpose of the ordinance is to protect local businesses at the expense of transient merchants. The plaintiff has not offered any evidence to establish that proposition. Since the Court issued its prior opinion, the plaintiff has filed a second amended complaint, which reasserts the plaintiff's Equal Protection and Dormant Commerce Clause challenges and adds a token Due Process claim.

The plaintiff applied for and received a license on June 9, 2009 to operate its hotdog stand for three months, seven days a week, from 11 a.m. to 8 p.m. By its terms, the license expired on November 3, 2009. Under the terms of the old ordinance, the plaintiff also was required to obtain permission to operate its hotdog cart in the desired locations, which was within a "restricted area" in the downtown district. That permission was never granted. It is undisputed that the plaintiff never applied for a license to operate its cart in 2010, has not applied for a license in 2012, and never completed the process of applying for a license in 2011. The plaintiff also admits she never applied for a variance.

Monroe City Ordinance 11–001, signed into law in 2011 and presently in effect, amended Ordinance 374–2 by striking the reference in the definition section to a "restricted area." It amended section 374–11 by eliminating all references to a restricted area and deleting the requirement of obtaining special permission to operate anywhere in the City, and maintained in that section a requirement that the transient merchant have liability insurance. The new ordinance also amended section 374–13 by deleting as prohibited conduct engaging in business as a transient merchant in the restricted area without special permission.

The amended ordinance still prohibits "[r]emain[ing], while engaged in the business of a hawker and peddler, in any one place in the City for a period of time longer than 10 minutes." City of Monroe Ordinance § 374–13(A)(4) (as amended by Monroe City Ordinance 11–001). There is no provision of the ordinance that would prohibit an applicant from seeking a variance from the ten minute provision, and City states that it remains open to negotiation on that point.

The plaintiff explains that it did not pursue the application process to completion after 2009 because of representations by City officials that they would block the application and require the plaintiff to move its business operations to another location every ten minutes. However, the plaintiff attached to its complaint a letter in response to the 2011 application which belies those allegations. The City stated in its letter: "The application will be granted subject to the following," and then listed a number of formal requirements that the plaintiff had failed to meet in order to complete the application. Second Amend. Compl., Ex. G, Letter dated July 29, 2011. The City stated that the application (1) did not include a copy of a valid current Michigan Sales Tax License, as required by the city code; (2) did not state whether the plaintiff planned to operate as a "hawker or peddler" or as a "transient merchant"; (3) did not include the required fees; (4) indicated that the plaintiff

would operate from a "lot," but did not specify the location of the lot; (5) did not include proof of a $500 bond as required under the city code; (6) and did not include an executed "release and hold harmless agreement." *Id.* at 1–2.

The City also pointed out that (1) the plaintiff would have to demonstrate for each specific location that pedestrian traffic would not be blocked and that the setup of the cart would not compromise access to public spaces as mandated by the Americans with Disabilities Act; and (2) "hawkers and peddlers" are subject to the 10–minute limitation under ordinance § 374–13(A)(4), but "[a] transient merchant … may operate on private property which is not covered by the 10 minute limit."

The ordinance contains some definitions that correspond to the references in the City's letter. A hawker and peddler is defined as

> [a]ny person who goes about to any private residence or residences, or upon the streets, sidewalks or public alleys, or on any other public property in the City, carrying, selling, offering for sale or taking orders for the sale of edible items, goods, wares, merchandise or any kind of property or thing.

City of Monroe Ordinance § 374–2 (as amended by Monroe City Ordinance 11–001) A transient merchant is

> [a]ny person engaged temporarily in the retail sale or delivery of edible items, goods, wares, merchandise or any kind of property or thing from any lot, premises, building, room or structure.

*Ibid.*

The City attached to its letter a catalog of detailed comments from the City Planning Department, which explained concerns about space and access at eight specific locations proposed in the plaintiff's application. The City reviewed each of the locations and times and offered comments on each, which are summarized as follows: (1) West 4th and Monroe Street—the sidewalks and public rights of way are too narrow to allow easy setup of the cart, but a vacant lot on the northwest corner or nearby private parking lots could be used with the owners' permission, under the transient merchant provision; (2) St. Mary's Park—except during the Jazz Festival, several areas in the park would be useable, subject to the 10–minute limitation, or the plaintiff could locate in the parking lot of nearby St. Mary's Church (again, allowing operation as a transient merchant); (3) Veterans Park—several locations in the park might work, but subject to the 10–minute limitation; (4) N. Dixie and E. Elm Street—sidewalks are narrow and access is limited, but a nearby City owned lot might allow placement, and the plaintiff did not indicate any time frame; (5) Altrussa Park—narrow sidewalks may not accommodate the cart and would impede loading and unloading, but several downtown parking lots nearby would allow for suitable transient merchant operation; (6) Courtyard between City Hall and Courthouse—access is limited but use might be allowed, subject to the 10–minute limit; (7) Washington and E. First—use might be acceptable as long as the trailer and vehicle does not block any pedestrian or auto traffic, subject to the 10–minute limit; and (8) E. Second and Washington—narrow sidewalks and nearby emergency vehicle parking would be a problem, and use would be subject to the 10–minute limit.

Although the ordinance does not state that the phrase "transient merchant" includes only operators located on private property, it appears from the City's comments that it considers any placement of a cart on public property to constitute "hawking and peddling," and any placement on private property to constitute op-

eration as a "transient merchant." The definitions of the two terms overlap, but it appears that public-property difference is the point of distinction (although a transient merchant is one who operates from "any lot"). In each case where the plaintiff suggested a location in a park or other public space, the City commented on that point, e.g., "[t]he proposed timeframe does not meet the ordinance requirements for hawkers and peddlers, but would be acceptable for a transient merchant (private property)." Second Amend. Compl., Ex. G, Letter dated July 29, 2011 at 5–6. The City does not appear to interpret the term "lot" to include any public space, which makes some sense when counterposed with the language of the hawker and peddler definition, where it refers to a vendor who "goes about ... upon the streets, sidewalks, or public alleys, or on other public property in the City."

The plaintiff filed its original complaint in the Monroe County, Michigan circuit court on July 21, 2009. The City removed the case to this Court on August 6, 2009. After a number of pretrial conferences, efforts at mediation, and extended briefing, the Court denied the plaintiff's motion for a preliminary injunction on July 8, 2011. The plaintiff filed an amended complaint on July 25, 2011 and a second amended complaint on March 19, 2012. The City filed its motion for summary judgment on August 20, 2012.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A trial is required only when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The parties have not seriously contested the basic facts of the case. The main issue centers on whether the city ordinance unlawfully restricts the plaintiff's proposed business activity. Where the material facts are mostly settled, as here, and the question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.,* 581 F.3d 431, 435 (6th Cir.2009).

In its motion, the City argues that (1) the ordinance does not violate the Dormant Commerce Clause; (2) the ordinance does not violate the Equal Protection Clause; (3) the ordinance does not violate the Due Process Clause; and (4) the plaintiff cannot sustain a claim for money damages. The plaintiff responds that the ordinance as amended (1) violates the Dormant Commerce Clause, because it frustrates legitimate business interests by local regulations that further purely protectionist interests; and (2) violates the Equal Protection Clause, because it creates an unlawful classification by treating hawkers and peddlers and transient merchants different than local merchants. The plaintiff asserts that even though the hot dog cart does not appear to fit the definition of a hawker and peddler, under the amended ordinance, the City has indicated that it intends to enforce the 10–minute limit against plaintiff. The plaintiff did not address its due process claim in its brief.

It its opinion and order denying the plaintiff's motion for a preliminary injunction, the Court held that the amended ordinance did not violate either the Equal Protection Clause or the Dormant Commerce Clause. The plaintiff has not offered any additional or different argu-

ments that persuades the Court that it ought to reach a different result.

The plaintiff cites only one case—*Russell v. Town of Pittsford,* 94 A.D.2d 410, 464 N.Y.S.2d 906 (1983)—as having struck down a similar measure with a 10–minute time limit, but that case is not on point, because it concerned only a superseding statute that was found to be vague and overbroad. The plaintiff argues that in *Russell* the court rejected the town's claims that the ordinance was justified as means to "avoid traffic hazards and preserve the town's aesthetics." However, the plaintiff misreads the holding of *Russell,* which did not concern a "10–minute restriction" at all. In that case the New York Supreme Court struck down an ordinance that stated: "It shall be unlawful for any person subject to this chapter to stand, or permit any vehicle used by him to stand, in any place for any period of time, except in direct response to a customer's request to purchase, and then only for such period of time as is necessary to effect the sale and purchase." *Russell,* 94 A.D.2d at 410, 464 N.Y.S.2d at 907–08. The Court merely noted that a prior version of the ordinance had contained a 10–minute time limit, and that the parties conceded that the town had never enforced it in that form. The *Russell* court struck down the ordinance on various state law grounds, including because it found the ordinance unconstitutionally vague.

There is compelling persuasive authority suggesting that the ordinance is valid. In *Perry v. City of Chicago,* 480 F.Supp. 498 (N.D.Ill.1979), the district court upheld against equal protection and due process challenges a city ordinance that prohibited the sale of all items other than newspapers within certain districts of the city. Going further, the Ninth Circuit in *One World One Family Now v. City and County of Honolulu,* 76 F.3d 1009 (9th Cir.1996), up-

held a total ban on sales by street vendors in public spaces, overruling even a First Amendment challenge where the plaintiffs were peddlers of slogan-bearing T-shirts. In *Ayres v. City of Chicago,* 966 F.Supp. 701 (N.D.Ill.1997), the Northern District of Illinois disagreed with the Ninth Circuit's answer to the First Amendment question in *One World,* but also distinguished *Perry* approvingly, pointing out that the peddler there had made no showing that the ban prevented him from communicating any message.

If a city may constitutionally prohibit all sales in public spaces, then it may impose any lesser regulation as well, even if that regulation has the practical effect of preventing an itinerant merchant from plying his trade entirely. The Wisconsin Supreme Court explained 75 years ago, when it upheld a 15–minute time limit on peddlers in public areas, that such regulation of public spaces is a valid exercise of a state's police powers:

> It is clear that no effective use of the public streets and square for such purposes can be made if each vendor must interrupt his sales, reload his truck, and move within the time limited. Thus, the case involves essentially the question whether the council may prohibit the use of the streets and the public square as a market place. If it may prohibit, then what purports to be a regulation having this necessary effect is not invalid because it amounts to a prohibition, nor is it unreasonable because it accomplishes by indirection that which is within the power of the common council.

*City of Stevens Point v. Bocksenbaum,* 225 Wis. 373, 274 N.W. 505, 507 (1937).

Here, the City has not gone so far as to prohibit the plaintiff, either expressly or practically, from plying its trade in the City's downtown area. As the City has pointed out repeatedly, the plaintiff may

operate her cart unburdened by any time limit as long as she does so in any suitable private parking area or other open private lot. The City even suggested several such locations in its response to the plaintiff's inquiry. The plaintiff also remains free to operate her cart in a number of public areas that allow for safe loading and unloading and where the cart would not block traffic, subject to the 10–minute time limit. And as the Court noted in its prior opinion, nothing in the ordinance prohibits the plaintiff from seeking a variance from the 10–minute time limit as to specific public spaces, but to date she has still not requested one.

To be sure, the 10–minute time limit does erect a practical ban on the plaintiff's operation of her cart in public spaces; as observed previously, the Hummer® hot dog cart (also known as the "World's Best Hot Dog Cart") is relatively large—52″ wide, 78″ long, and 56″ high—and weighs 350 pounds. It may be impractical for the plaintiff to move the cart at all without loading it onto its trailer, and the loading process may take more than 10 minutes. But it is within the City's power to prohibit peddling in public areas altogether, and therefore it is also within its power to regulate that activity to the extent of prohibiting it in practice.

### A. Equal Protection claim

█ For several reasons, the Court concludes that a jury reasonably could not find an Equal Protection Clause violation. First, the plaintiff cannot show that the City has discriminated against it, because it has not even completed the application process under the amended ordinance. Because the City never had a chance to grant or deny the plaintiff anything, the plaintiff cannot contend that it has been unfairly treated in any way. Moreover, the City indicated in its response that it stands ready to grant the plaintiff a license, if the plaintiff should ever decide properly to apply for one.

Second, if the ordinance sets up any classification, it is subject only to rational basis review, *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 864 (6th Cir.2012) (holding that rational-basis review is appropriate where there are "no suspect classifications or fundamental rights" at issue), and the City has provided valid reasons for its legislation. The City maintains that it seeks to promote smooth traffic flow and ensure pedestrian safety on downtown streets and sidewalks. It explained in detail how certain locations simply cannot accommodate the awkward bulk of the plaintiff's cart, and in several instances proposed nearby alternative locations that might be suitable. The goal of ensuring that sidewalks and streets are not blocked, and that pedestrians, motorists, and plaintiff itself are not endangered by the presence of an unwieldy cart in congested public spaces, all are legitimate ends that provide a rational basis for the City's regulation of transient vendors in the downtown area. The 10–minute limitation is a reasonable measure that may ensure that, when a vendor does happen to obstruct any particular location, it will not do so for long. The fact that the time limit may prevent the plaintiff from pursuing her specific trade, because she must load and unload an unusually large and heavy cart from a vehicle-towed trailer, does not show that the time limit is itself unreasonable.

Finally, even if the City admits protectionism of local brick-and-mortar businesses as one motive for the ordinance, that does not mean that the ordinance is invalid where other, legitimate motives provide a permissible and rational basis. *EJS Properties*, 698 F.3d at 865 (holding that to establish a lack of a rational basis, a plaintiff must "either (1) 'negate every

conceivable basis which might support the government action or [ (2) ] demonstrate that the challenged government action was motivated by animus or ill-will.' " (quoting *Warren v. City of Athens,* 411 F.3d 697, 711 (6th Cir.2005))); *see also One World,* 76 F.3d at 1013 (citing *Turner Broadcasting Sys., Inc. v. FCC,* 512 U.S. 622, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)) (finding that a motive of protecting resident merchants from competition from sidewalk merchants who paid neither rent nor taxes was legitimate); *Brown v. City of Newark,* 113 N.J. 565, 552 A.2d 125 (1989) (holding that although the ordinance was vague as written, it was supported by legitimate concerns for traffic flow and pedestrian safety, which were not negated by possible impermissible desire to protect retail merchants).

Certainly, the 1996 ordinance was more restrictive. The second amended complaint suggests that the plaintiff held a license in the summer of 2009 but could not use it in the "restricted area" per the old version of the ordinance. The second amended complaint may be fairly read as asserting some claim for damages for that five-month period under the 1996 language, although it does not plausibly develop any factual or legal arguments in support of its conclusory claims that "The Act, before and after its Amendments, violates the Equal Protection Clause[ ]" and "has unfairly discriminated against interstate commerce." Second Amend. Compl. ¶¶ 36, 45. But even if such a claim for lost profits is stated, the precedents cited above apply equally to the "restricted area" provision. Those federal courts have upheld outright bans on itinerant vending in particular city districts; even if the ordinance has the effect of banning all peddling and hawking within the "restricted area," it would still survive equal protection and due process challenges.

## B. Dormant Commerce Clause claim

The Dormant Commerce Clause prohibits states from "build[ing] up [their] domestic commerce by means of unequal and oppressive burdens upon the industry and business of other States." *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 272–73, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) (internal quotation marks and citation omitted; alteration in original) (striking down as unconstitutional a Hawaii excise tax that exempted beverages produced within the State). But under that doctrine, states are free to enact laws regulating "matters of local state concern, even though [those laws] in some measure affect[ ] the commerce, provided [they] do[ ] not materially restrict the free flow of commerce across state lines, or interfere with it in matters with respect to which uniformity of regulation is of predominant national concern." *S. Pac. Co. v. State of Arizona ex rel. Sullivan,* 325 U.S. 761, 770, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945).

A jury could not conclude reasonably that the ordinance violates the Dormant Commerce Clause, because the 10–minute limit, if it discriminates at all, has an equal impact on all itinerant vendors, regardless of whether they are local or from outside the state. The plaintiff attempts to cast any regulation affecting someone who has "engaged" in interstate commerce as a "burden" on that commerce, but that is not the law. Where the statute does not directly impact the flow of goods across state lines, the plaintiff must show that any indirect burden is "clearly excessive" in relation to the local benefit. *CSX Transp., Inc. v. City of Plymouth,* 283 F.3d 812, 818 (6th Cir.2002) (holding that where the state employs nondiscriminatory means to regulate interstate commerce, the "proper standard" for determining whether that statute violates the Commerce Clause is "whether the burden

the statute imposes on interstate commerce is 'clearly excessive in relation to the putative local benefits.' " (quoting *C & A Carbone, Inc. v. Town of Clarkstown,* 511 U.S. 383, 390, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994))). Here, the burden, if there is one, weighs only slightly, and the goal of regulating conduct in public places to ensure smooth traffic flow and pedestrian safety substantially outweighs it.

### C. Due Process claim

Although the plaintiff's brief suggests that it has abandoned its due process claim, at oral argument plaintiff's counsel stated that he believed the claim was bound up in the plaintiff's equal protection and Dormant Commerce Clause arguments.

 To establish a procedural due process violation, the plaintiff must show that it (1) had a life, liberty, or property interest protected by the Constitution; (2) was deprived of that interest by a state actor; and (3) was not afforded timely and adequate process under law. *Waeschle v. Dragovic,* 576 F.3d 539, 544 (6th Cir.2009). The right to substantive due process prohibits the government from infringing on "fundamental rights" without sufficient justification. *Rendell–Baker v. Kohn,* 457 U.S. 830, 837–38, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). "To state a cognizable substantive due process claim, the plaintiff must allege 'conduct intended to injure in some way unjustifiable by any government interest' and that is 'conscience-shocking' in nature." *Mitchell v. McNeil,* 487 F.3d 374, 377 (6th Cir.2007) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). " 'What seems to be required is an intentional infliction of injury ... or some other governmental action that is 'arbitrary in the constitutional sense.' " *Stemler v. City of Florence,* 126 F.3d 856, 869 (6th Cir.1997) (quoting *Lewellen v. Metro. Gov't of Nashville & Davidson County,* 34 F.3d 345, 351 (6th Cir. 1994)).

 No basis exists for a jury to find for the plaintiff on its due process claim, because the plaintiff has failed to support or argue that claim in any way. A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. It is well established that in attempting to resist summary judgment, "[a] plaintiff cannot simply sit back and highlight deficiencies in the defendant's argument without providing some affirmative support for its own position." *Newell Rubbermaid, Inc. v. Raymond Corp.,* 676 F.3d 521 (6th Cir.2012). Here, the City has attacked the plaintiff's due process claim, but the plaintiff has not pointed out any flaws in the City's argument; in its response to the summary judgment motion, the plaintiff does not mention, let alone "designate specific facts" to support, its due process claims.

Moreover, there is no viable due process claim, either on procedural or substantive grounds. The plaintiff has shown no protected property interest that it possessed or was denied. The plaintiff did not apply at all for a license in 2010 and 2012, and did not complete the basic requirements for its application in 2011. And for the only application that the plaintiff did complete in 2009, it acknowledged in the second amended complaint that the City provided notice and an opportunity to be heard, demonstrating that the plaintiff was afforded sufficient process when the City denied the special permit to operate in the restricted area.

### III.

The Court concludes that the plaintiff has failed to bring forth evidence that demonstrates that the City of Monroe's ordinance regulating transient merchants and hawkers and peddlers violates any of the constitutional provisions alleged. The City is entitled to a judgment as a matter of law.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt. # 43] is **GRANTED.**

It is further **ORDERED** that the case is **DISMISSED WITH PREJUDICE.**